# EXHIBIT "E"



# First American Title Insurance Company
## 8109 W Grandridge Blvd, Suite 110
## Kennewick, WA 99336

April 09, 2021

Carrie Hurst
Ray Quinney and Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, UT 84111

Phone: (801)323-3431

| | |
|---|---|
| Title Officer: | Kevin L. Howes |
| Phone: | (509)734-0771 |
| Fax No.: | (866)907-4468 |
| E-Mail: | Khowes@firstam.com |
| Order Number: | 3695103 |

Reference Number:

Owner: 3-E Properties / Easterday
Property: 5235 Industrial Way / 1427 N 1st Ave
Pasco, Washington 99301

Attached please find the following item(s):

Guarantee

Thank You for your confidence and support. We at First American Title Insurance Company maintain the fundamental principle:

## *Customer First!*



| First American Guarantee | Trustee's Sale Guarantee |
|---|---|
| | ISSUED BY |
| | First American Title Insurance Company |
| | GUARANTEE NUMBER |
| | **5002553-3695103** |

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE,

**FIRST AMERICAN TITLE INSURANCE COMPANY**
a Nebraska corporation, herein called the Company

**GUARANTEES**
the Assured named in Schedule A of this Guarantee

herein called the Assured against loss not exceeding the liability amount stated in Schedule A shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, on the Date of Guarantee shown in Schedule A:

1. The title to the herein described estate or interest was vested in the vestee named, subject to the matters shown as Exceptions herein, which Exceptions are not necessarily shown in the order of their priority;

2. The names and addresses of additional persons, as provided by the revised code of Washington Chapter 61.24,et seq., to whom the trustee is required to transmit a copy of the Notice of Sale are as shown herein.

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Guarantee shown in Schedule A.

First American Title Insurance Company

Dennis J. Gilmore, President

Greg L. Smith, Secretary

**This Jacket was created electronically and constitutes an original document**

## SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1. Except to the extent that specific assurances are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:
   (a) Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.
   (b) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.
   (c) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.
2. Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

   (a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A) of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.
   (b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1) which are created, suffered, assumed or agreed to by one or more of the Assureds; (2) which result in no loss to the Assured; or (3) which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.
   (c) The identity of any party shown or referred to in Schedule A.
   (d) The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

## GUARANTEE CONDITIONS AND STIPULATIONS

1. **Definition of Terms.**
   The following terms when used in the Guarantee mean:
   (a) the "Assured": the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.
   (b) "land": the land described or referred to in Schedule (A), and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A), nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
   (c) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (d) "public records": records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
   (e) "date": the effective date.
2. **Notice of Claim to be Given by Assured Claimant.**
   An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.
3. **No Duty to Defend or Prosecute.**
   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.
4. **Company's Option to Defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.**
   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

   (a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
   (b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.
   (c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.
   (d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such Assured for this purpose. Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

## GUARANTEE CONDITIONS AND STIPULATIONS (Continued)

5. **Proof of Loss or Damage.**
In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to such assured under the Guarantee shall terminate. In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6. **Options to Pay or Otherwise Settle Claims: Termination of Liability.**
In case of a claim under this Guarantee, the Company shall have the following additional options:
   (a) To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.
   The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by said mortgage or said lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.
   Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price.
   Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.

   (b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.
   To pay or otherwise settle with other parties for or in the name of an Assured claimant any claim assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.
   Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4.

7. **Determination and Extent of Liability.**
This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the Exclusions From Coverage of This Guarantee.
The liability of the Company under this Guarantee to the Assured shall not exceed the least of:
   (a) the amount of liability stated in Schedule A or in Part 2;
   (b) the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or
   (c) the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate or interest subject to any defect, lien or encumbrance assured against by this Guarantee.

8. **Limitation of Liability.**
   (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
   (b) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.
   (c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

9. **Reduction of Liability or Termination of Liability.**
All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

10. **Payment of Loss.**
   (a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
   (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within thirty (30) days thereafter.

## GUARANTEE CONDITIONS AND STIPULATIONS (Continued)

11. **Subrogation Upon Payment or Settlement.**
    Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.
    The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.
    If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

12. **Arbitration.**
    Unless prohibited by applicable law, either the Company or the Assured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision or other obligation. All arbitrable matters when the Amount of Liability is $1,000,000 or less at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in the excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. The Rules in effect at Date of Guarantee shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permits a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
    The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
    A copy of the Rules may be obtained from the Company upon request.

13. **Liability Limited to This Guarantee; Guarantee Entire Contract.**
    (a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.
    (b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.
    (c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

14. **Notices, Where Sent.**
    All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.**



| | |
|---|---|
| First American<br>**Schedule A** | Trustee's Sale Guarantee<br>ISSUED BY<br>First American Title Insurance Company<br>GUARANTEE NUMBER<br>**3695103** |

File No.: 3695103

Liability: $1,175,000.00                              Fee: $2,174.00

Effective Date: April 08, 2021 at 8:00 am             Tax: $186.96

1. Name of Assured:

   Ray Quinney and Nebeker P.C. and Rabo AgriFinance

2. Title to said estate or interest at the date hereof is vested in:

   The heirs and devisees of Gale Easterday, deceased and Karen Easterday as her sole and separate property and Cody Easterday and Debby Easterday, husband and wife and Jody Easterday as her sole and separate property, as to Parcel A and 3-E Properties, a Washington general partnership, as to Parcel B

3. The estate or interest in the land hereinafter described or referred to covered by this Guarantee is:

   Fee Simple

4. The land referred to in this Guarantee is situated in the County of Franklin, State of Washington and is described as follows:

   PARCEL A:

   All of Blocks 13 and 14, Northern Pacific Addition to the City of Pasco, according to the plat thereof recorded in Volume "B" of Plats, page 60, records of Franklin County, Washington;

   TOGETHER WITH the south half of vacated Court Street adjoining said premises, vacated by City of Pasco Ordinance No. 3685, recorded August 19, 2004 under Recording No. 1649527, which attached by operation of law

   PARCEL B:

   That portion of the Southwest quarter of Section 8, Township 9 North, Range 30 East, W.M., Franklin County, Washington, described more particularly as follows:

   Commencing at the Southwest corner of said Section 8, said corner being South 04°14'13" West 5471.86 feet from the Northwest corner of said section; thence South 89°23'28" East along the South line of said section 782.49 feet to the True Point of Beginning:

   thence North 01°05'06" East 508.87 feet to the beginning of a curve to the left, the radius point of which bears North 88°54'54" West 740.00 feet; thence Northwesterly along said curve 159.33 feet through a central angle of 12°20'12" to a point that is 40.00 perpendicular to the centerline of the

railroad siding; thence continuing along said curve 41.78 feet, through a central angle of 03°14'00" to the centerline of the railroad siding; thence North 60°28'07" East 2.11 feet to the Southwest corner of the parcel shown on that record survey filed in Volume 2 of Surveys at page 347; thence North 60°28'07" East along the South line of said parcel 270.03 feet to the beginning of a curve to the left, the radius point of which bears North 29°31'53" West 716.20 feet; thence Northeasterly along said curve and said Southerly line 832.73 feet through a central angle of 66°37'44" to the terminus of said curve: thence North 71°13'27" East along said Southerly line 46.72 feet to the Southeast corner of said parcel and a point on the Westerly right-of-way line of Highway 395; thence South 13°17'39" East along said Westerly right-of-way line 68.69 feet; thence South 04°20'11" West 1500.00 feet to a point on the South line of said Section 8; thence North 89°23'28" West 528.73 feet to the True Point of Beginning;

TOGETHER WITH that portion of the Northeast quarter of the Southwest quarter of said Section 8, lying Westerly of SR 395.



| | Trustee's Sale Guarantee |
|---|---|
| **First American** | ISSUED BY |
| **Schedule B** | First American Title Insurance Company |
| | GUARANTEE NUMBER<br>**3695103** |

### EXCEPTIONS:

File No.: 3695103

(All recording data refer to records in the office of the County Recorder in the County in which the land is situated.)

1. General Taxes for the year 2021. The first half becomes delinquent after April 30th. The second half becomes delinquent after October 31st.

    Tax Account No.:        112021017

    | | **1st Half** |
    |---|---|
    | Amount Billed: | $   12,590.11 |
    | Amount Paid: | $          0.00 |
    | Amount Due: | $   12,590.11 |
    | Assessed Land Value: | $ 326,200.00 |
    | Assessed Improvement Value: | $ 2,209,400.00 |
    | | **2nd Half** |
    | Amount Billed: | $   12,590.11 |
    | Amount Paid: | $          0.00 |
    | Amount Due: | $   12,590.11 |
    | Assessed Land Value: | $ 326,200.00 |
    | Assessed Improvement Value: | $ 2,209,400.00 |

2. General Taxes for the year 2021. The first half becomes delinquent after April 30th. The second half becomes delinquent after October 31st.

    Tax Account No.:        113130040

    | | **1st Half** |
    |---|---|
    | Amount Billed: | $   34,901.44 |
    | Amount Paid: | $          0.00 |
    | Amount Due: | $   34,901.44 |
    | Assessed Land Value: | $ 751,200.00 |
    | Assessed Improvement Value: | $ 6,284,700.00 |
    | | **2nd Half** |
    | Amount Billed: | $   34,901.44 |
    | Amount Paid: | $          0.00 |
    | Amount Due: | $   34,901.44 |
    | Assessed Land Value: | $ 751,200.00 |
    | Assessed Improvement Value: | $ 6,284,700.00 |

3. This land is included within South Columbia Basin Irrigation District and is subject to laws and regulations of the United States and the State of Washington applicable to the Columbia Basin Project and is liable for further assessments, if any, levied by said District. None currently due and owing.

4.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records.

5.  Relinquishment of right to access to State Highway and of light, view and air, under terms of Deed to the State of Washington .
    Recorded:                         November 1, 1963
    Recording Information:            253908
    Affects:                          Parcel B

6.  Relinquishment of right to access to State Highway and of light, view and air, under terms of Deed to the State of Washington .
    Recorded:                         March 31, 1964
    Recording Information:            259564
    Affects:                          Parcel B

7.  Agreement and the terms and conditions thereof:
    Between:                          United States of America, South Columbia Basin Irrigation District
    And:                              Harold Cox
    Recording Information:            367700

8.  Reservations contained in Deed:
    Executed By:                      United States of America
    Recorded:                         December 6, 1977
    Recording Information:            375960
    As Follows:

    There is reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed, or to be constructed by the authority of the United States; and of all minerals.

    Our title examination does not include the present ownership of the above reserved mineral rights.

9.  Reservations and exceptions contained in deed from Glacier Park Company:
    Auditor's File No.:               475531
    As follows:

    Reserving and excepting from said lands so much or such portions thereof as are or may be mineral lands or contain coal or iron, and also the use and the right and title to the use of such surface ground as may be necessary for mining operations and the right of access to such reserved and excepted mineral lands, including lands containing coal or iron, for the purpose of exploring, developing and working the same.

    Our title examination does not include the present ownership of the above reserved mineral rights.

10. Agreement and the terms and conditions thereof:
    Between:                          Franklin County Irrigation District
    And:                              Port of Pasco
    Recording Information:            513630

11.  Easement, including terms and provisions contained therein:
    In Favor Of:         Public Utility District No. 1 of Franklin County
    Purpose:             Electric transmission and/or distribution system
    Recorded:            August 6, 1997
    Recording No.:       543964

12.  Conditions, notes, easements, provisions and/or encroachments contained or delineated on the face of the Survey recorded under Recording No. 1564844.

13.  Easement, including terms and provisions contained therein:
    In Favor Of:         Public Utility District No. 1 of Franklin County
    Purpose:             Electric transmission and/or distribution system
    Recorded:            February 28, 2002
    Recording No.:       1602337

14.  Easement and conditions contained therein as reserved by:
    Ordinance No.:           3685
    Approved On:             August 16, 2004
    Recording Information:   1649527
    In Favor of:             City of Pasco
    For:                     Construction, repair and maintenance of public utilities and services
    Affects:                 Parcel A

15.  Conditions, notes, easements, provisions and/or encroachments contained or delineated on the face of the Survey recorded under Recording No. 1733853.

16.  An easement reserved in a deed, including the terms and provisions thereof;
    Recorded:                August 4, 2009
    Recording Information:   1738268
    From:                    Port of Pasco
    To:                      3-E Properties, a Washington general partnership
    For:                     Rail Siding
    Affects:                 Parcel B

17.  Mortgage and the terms and conditions thereof.
    Mortgagor:               3-E Properties, a Washington general partnership, Gale Easterday and Karen Easterday, husband and wife, Cody Easterday and Debby Easterday, husband and wife and Jody Easterday, a married woman dealing with her sole and separate property
    Mortgagee:               Rabo Agrifinance, Inc.
    Amount:                  $9,500,000.00
    Dated:                   September 4, 2009
    Recorded:                September 18, 2009
    Recording Information:   1740144

18.  Unrecorded leaseholds, if any, rights of vendors and security agreement on personal property and rights of tenants, and secured parties to remove trade fixtures at the expiration of the term.

19.  Gale A. Easterday died leaving a Non-Intervention Will.

    Admitted to Probate:         January 14, 2011
    Probate Case No.:            21-4-50004-11, Franklin County
    Personal Representative:     Karen Easterday

    Attorney for Estate:    R. Crane Bergdahl

Said personal representative is authorized to administer the estate without intervention of court and to mortgage, convey or contract to convey decedent's interest in said premises.

20.    Proceedings pending in the Circuit Court for Franklin County, Washington .

| | |
|---|---|
| Suit No.: | 21-2-50049-11 |
| Filed: | February 1, 2021 |
| Plantiff: | Washington Trust Bank |
| Defendant: | Easterday Ranches, Inc., Easterday Farms, Cody Easterday, Debby Easterday, Karen Easterday |
| Being a suit for: | Foreclosure of Promissory Note |



# Schedule C

**Trustee's Sale Guarantee**

ISSUED BY

First American Title Insurance Company

GUARANTEE NUMBER
**3695103**

## INFORMATION FOR TRUSTEE

File No.: 3695103

Relative to the Mortgage shown as Exception No. 17 of this Guarantee

1. Recording District in which the land is located: Franklin

2. Property Address: 5235 Industrial Way / 1427 N 1st Ave, Pasco, WA 99301
   Assessors Parcel No: 112021017 and 113130040
   Abbreviated Legal: Portion of SW4 of 8-9-30 and Blocks 13 and 14, Northern Pacific Addition to the City of Pasco

3. The names and addresses of additional persons, as provided by the Revised Code of Washington Chapter 61.24, et. seq., to whom the trustee is required to transmit a copy of the Notice of Sale:

    A. Parties in possession.

    B. 3E Properties, the heirs and devisees of Gale Easterday, deceased and Karen Easterday and Cody Easterday and Debby Easterday and Jody Easterday

    PO Box 2813
    Pasco, WA 99301
    Owner

4. Attention is called to the Federal Tax Lien Act of 1966 (Public Law 89-719) which, among other things, provides for the giving of written Notice of Sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to such lien a right in the United States to redeem the property within a period of 120 days from the date of the sale:

5. This Company will, upon request of the trustee or its attorney, on the 30th day preceding the date set for the Trustee's Sale, report filing of federal tax liens affecting the premises under examination. The responsibility for determining the 30th day before the sale and making the request on that same day is to be borne by the applicant and is not an automatic service of the Company.

6. Attention is called to the Servicemembers Civil Relief Act which contains inhibitions against the sale of land under a mortgage if the vestee is entitled to the benefits of the Act.

7. The map, if one is attached hereto, may or may not be a survey of the land depicted. You should not rely upon it for any purpose other than orientation to the general location of the parcel or parcels depicted. First American Title Insurance Company expressly disclaims any liability for alleged loss or damage which may result from reliance upon this map.

8. Unless the property described in this report is located in King, Pierce or Spokane Counties no search of the records of the United States Bankruptcy Court has been made.

NOTE: While currently making no commitment to insure, in the event that the Company will be requested to issue an owner's or lender's title insurance policy following a non-judicial foreclosure and trustee's sale, the Company may require the review, for form and sufficiency, of the beneficiary's declaration to the trustee as set forth in RCW 61.24.030(7)(a).