1  Jeffrey C. Misley, WSBA #33397                    Honorable Stanley A. Bastian
   jmisley@sussmanshank.com
2  Steven F. Cade, *pro hac vice*
   scade@sussmanshank.com
3  SUSSMAN SHANK LLP
   1000 S.W. Broadway, Suite 1400
4  Portland, OR 97205-3089
   Telephone: (503) 227-1111
5  Facsimile: (503) 248-0130

6  *Attorneys for Defendants Cody and
   Debby Easterday*

7

8           IN THE UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
9

10  RABO AGRIFINANCE LLC, a Delaware        Case No. 4:21-cv-05066
    limited liability company, fka Rabo
11  Agrifinance, Inc.,

12                  Plaintiff,
    v.
13
    KAREN EASTERDAY, as an individual,      ANSWER AND COUNTERCLAIMS
14  as personal representative of the Estate of   OF DEFENDANTS CODY AND
    Gale Easterday, deceased, and the marital   DEBBY EASTERDAY
15  community of Karen Easterday and Gale
    Easterday; CODY EASTERDAY and
16  DEBBY EASTERDAY, individually and
    the marital community thereof; and JODY
17  EASTERDAY, individually and the marital
    community of Jody Easterday and Andrew
18  H. Wills,

19                  Defendants.

20  _____

21  //

22  //

23  //

24  //

25  //

26  //

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

JODY EASTERDAY, an individual,

2

KAREN EASTERDAY, as an
individual, as personal representative of

3

the Estate of Gale Easterday; CODY
EASTERDAY, individually; and

4

DEBBY EASTERDAY, individually

5

Counterclaim Plaintiffs,

6

v.

7

RABO AGRIFINANCE LLC, a
Delaware limited liability company, fka

8

Rabo Agrifinance, Inc.,

9

Counterclaim Defendant

10

11

Defendants Cody Easterday and Debby Easterday ("Defendants") hereby

12

respond to Plaintiff's Amended Complaint as follows:

13

1.    Defendants lack sufficient knowledge or information to admit or deny the

14

allegations in paragraph one, and therefore deny them.

15

2.    Defendants lack sufficient knowledge or information to admit or deny the

16

allegations in paragraph two, and therefore deny them.

17

3.    Defendants admit the allegations in paragraph three.

18

4.    Defendants admit Karen has been a GP of Farms and a Washington

19

resident, deny the remaining allegations in paragraph four as being beyond the scope

20

of the knowledge.

21

5.    Defendants admit Cody has been a GP of Farms and a Washington

22

resident, deny the remaining allegations in paragraph five as being beyond the scope

23

of the knowledge.

24

6.    Defendants admit Debby has been a GP of Farms and a Washington

25

resident, deny the remaining allegations in paragraph six as being beyond the scope of

26

the knowledge.

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1        7.      Defendants admit Jody is a Washington resident and deny the remaining
2   allegations in paragraph seven as being beyond the scope of their knowledge.

3        8.      Defendants admit that the documents referenced in paragraph eight speak
4   for themselves, and deny any further allegations in that paragraph.

5        9.      Defendants admit the allegations in paragraph nine.

6        10.     Defendants are without information as to defendant's knowledge, and
7   therefore deny the allegations in paragraph ten.

8        11.     Defendants admit that there is complete diversity between Rabo on one
9   hand and each defendant, and admit that Rabo seeks more than $75,000, and deny the
10  remaining allegations in paragraph eleven.

11       12.     Defendants lack sufficient knowledge or information to admit or deny the
12  allegations in paragraph twelve, and therefore deny them (except they admit that
13  defendants are citizens of Washington).

14       13.     Defendants admit the allegations in paragraph thirteen.

15       14.     Defendants admit the allegations in paragraph fourteen.

16       15.     Defendants incorporate herein their responses to the paragraphs
17  incorporated into paragraph fifteen.

18       16.     Defendants admit the allegations in paragraph sixteen.

19       17.     Defendants admit the allegations in paragraph seventeen, but deny any
20  implication that defendants were the only ones who executed and delivered the
21  Mortgage to Rabo.

22       18.     Defendants admit that the Mortgage speaks for itself, and deny the
23  remaining allegations in paragraph eighteen.

24       19.     Defendants admit that the Mortgage speaks for itself, and deny the
25  remaining allegations in paragraph nineteen.

26       20.     Defendants deny the allegations in paragraph twenty.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    21.    Admit Cody signed the RLOC Credit Agreement, which speaks for itself,

2    and deny the remainder of the allegations in paragraph twenty-one.

3    22.    Defendants admit the allegations in paragraph twenty-two.

4    23.    Defendants admit that the document (Exhibit B) speaks for itself and deny

5    the remaining allegations in paragraph twenty-three.

6    24.    Defendants admit that the document (Exhibit B) speaks for itself and deny

7    the remaining allegations in paragraph twenty-four.

8    25.    Defendants admit that the document (Exhibit B) speaks for itself and deny

9    the remaining allegations in paragraph twenty-five.

10    26.    Defendants admit that the document (Exhibit B) speaks for itself and deny

11    the remaining allegations in paragraph twenty-six, including but not limited to the

12    inapt paraphrase of the documentary language pleaded by plaintiff.

13    27.    Defendants admit that the document (Exhibit B) speaks for itself and deny

14    the remaining allegations in paragraph twenty-seven.

15    28.    Defendants admit Gale signed the RLOC Credit Agreement, and that

16    Cody signed the RLOC Credit Agreement and the VF Loan Agreement, which

17    documents speak for themselves.    Defendants deny the remaining allegations in

18    paragraph twenty-eight.

19    29.    Defendants admit that Gale died on December 10, 2020 and deny the

20    remaining allegations in paragraph twenty-nine.

21    30.    Defendants admit that Easterday Farms filed for protection under Title 11

22    of the United States Code on February 8, 2021.  Defendants are without knowledge as

23    to the remaining allegations in paragraph thirty, and therefore deny them.

24    31.    Defendants deny the allegations in paragraph thirty-one.

25    32.    Defendants deny the allegations in paragraph thirty-two.

26    33.    Defendants deny the allegations in paragraph thirty-three.

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

34.     Defendants incorporate herein their responses to the paragraphs incorporated into paragraph thirty-four.

35.     Defendants admit the allegations in paragraph thirty-five.

36.     Defendants deny the allegations in paragraph thirty-six.

37.     Defendants deny the allegations in paragraph thirty-seven.

38.     Defendants deny the allegations in paragraph thirty-eight.

39.     Defendants admit that RCW 25.05.125(1) speaks for itself, and deny the remaining allegations in paragraph thirty-nine.

40.     Defendants deny the allegations in paragraph forty.

41.     Defendants incorporate herein their responses to the paragraphs incorporated into paragraph forty-one.

42.     Defendants deny the allegations in paragraph forty-two.

43.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph forty-three, and therefore deny them.

44.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph forty-four, and therefore deny them.

45.     Defendants deny the allegations in paragraph forty-five.

46.     Defendants deny the allegations in paragraph forty-six.

47.     Defendants deny the allegations in paragraph forty-seven.

48.     Unless specifically admitted, Defendants deny all the allegations in the Amended Complaint, and the entirety thereof, including any entitlement to relief asserted in the prayer.

## ADDITIONAL FACTUAL BACKGROUND IN SUPPORT OF COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

49.     On September 4, 2009, Easterday Farms Produce, Co., a Washington corporation ("Easterday Produce"), 3E Properties, a Washington general partnership

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    ("3E Properties"), Gale Easterday, Karen Easterday, Cody Easterday, Debby
2    Easterday, Jody Easterday, and Andrew Wills (collectively, the "2009 Borrowers")
3    executed a Credit Agreement with Rabo for a construction line of credit loan and an
4    operating line of credit loan (collectively the "2009 Credit Agreement").

5        50.    To secure the amounts owed under the 2009 Credit Agreement, 3E
6    Properties, Gale Easterday, Karen Easterday, Cody Easterday, Debby Easterday, and
7    Jody Easterday ("2009 Mortgagors") executed and delivered to Rabo a Washington
8    Mortgage, Security Agreement, Fixture Filing, and Financing Statement (the "2009
9    Mortgage"), which encumbered certain real property owned, in part, by the 2009
10   Mortgagors.   A true and correct copy of the 2009 Mortgage, including a legal
11   description of the encumbered property, is attached hereto as **Exhibit A.**   The real
12   property secured by the 2009 Mortgage and identified as Parcel A on page 20 of
13   Exhibit A shall be referred to as the "2009 Property."

14       51.    On August 9, 2018, the 2009 Borrowers executed a "Facility Sheet" (a
15   term Rabo uses for a specific type of promissory note) promising to pay Rabo
16   $850,000.00 (the "2018 Credit Agreement").   A true and correct copy of the 2018
17   Credit Agreement is attached hereto as **Exhibit B.**

18       52.    To secure the obligations under the 2018 Credit Agreement,
19   3E Properties executed and delivered to Rabo a Mortgage, Assignment of Rents, and
20   Security Agreement (the "2018 Mortgage"), which encumbered certain real property
21   described therein.   A true and correct copy of the 2018 Mortgage is attached hereto as
22   **Exhibit C**.   The real property secured by the 2018 Mortgage, and also identified as
23   Parcel B on page 20 of Exhibit A, shall hereinafter be described as the "2018
24   Property."   Collectively, the 2009 Property and the 2018 Property shall hereinafter be
25   referred to as the "Secured Real Property."

26       53.    The Secured Real Property is in 3E Properties' possession and belongs to

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1      3E Properties.

2            54.     To further its security interest for both the 2009 Credit Agreement and

3      the 2018 Credit Agreement, Rabo recorded UCC Filings ("UCCs") encumbering

4      certain personal property owned by various people and entities, including Defendant

5      (the "Personal Property").  A true and correct copy of the UCCs are attached hereto as

6      **Exhibit D**.

7            55.     Beginning in approximately September 2020, certain of the 2009

8      Borrowers requested payoff numbers from Rabo.  In March 2021, while not in

9      monetary default, certain of the 2009 Borrowers again requested payoff numbers from

10     Rabo for the 2009 Credit Agreement and the 2018 Credit Agreement.  It was essential

11     that Rabo provide this information so the 2009 Borrowers could pay these secured

12     loans and unencumber the Secured Real Property and Personal Property for immediate

13     use in obtaining additional financing to allow for planting crops and furthering the

14     2009 Borrowers' business interests.  Rabo was aware that the timing (March 2021)

15     was critical because the time to plant crops was quickly approaching.

16           56.     On or about March 19, 2021, Rabo provided payoff quotes for the 2009

17     Credit Agreement and 2018 Credit Agreement.  True and correct copies of those quotes

18     are attached hereto as **Exhibit E**.

19           57.     In order to pay the amounts secured by the Secured Real Property, certain

20     of the 2009 Borrowers attempted to get wire instructions from Rabo, who ignored the

21     requests.  Therefore, on March 23, 2021, Easterday Produce initiated an ACH transfer

22     to Rabo in the amount of $840,718.35 to satisfy the 2009 Credit Agreement and obtain

23     a release of the 2009 Mortgage and UCCs.

24           58.     On or about March 23, 2021, 3E Properties paid Rabo through Rabo's

25     proprietary portal system $407,089.90 to pay off the 2018 Credit Agreement.

26     Contemporaneously with the two March 23, 2021, payments, Easterday Produce also

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 7

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  delivered to Rabo a written explanation as to why the payments were higher than
2  Rabo's payoff figures.  A true and correct copy of the payment and explanation is
3  attached here as **Exhibit F**.

4      59.    Rabo accepted the full payments of the 2009 Credit Agreement and 2018
5  Credit Agreement.  Despite receiving full payment, Rabo failed and refused to
6  acknowledge satisfaction of the 2009 Mortgage and the 2018 Mortgage, refused to
7  release the liens on the Secured Real Property, and refused to release the UCCs.

8      60.    On or about March 31, 2021, certain of the 2009 Borrowers sent a letter
9  via email and first class mail demanding that Rabo release the mortgages held on the
10  Secured Real Property and release the lien evidenced by the UCCs on the Personal
11  Property.  A true and correct copy of the March 31, 2021 email and letter to Rabo are
12  attached hereto as **Exhibit G**.

13      61.    Despite that demand, Rabo refused to release the encumbrances on the
14  Secured Real Property and the UCCs.

15      62.    When Easterday Produce demanded a reason why Rabo would not release
16  the liens on the 2009 Property and the 2018 Property, Rabo stated that in 2020,
17  Cody Easterday and Easterday Farms, a Washington general partnership, had entered
18  into an unsecured Vendor Financing Agreement (the "VF Loan"), and because Cody
19  Easterday was one of the borrowers, and a partner in 3E Properties, the 2009 Mortgage,
20  2018 Mortgage, and UCCs would not be released until the VF Loan was paid.  A true
21  and correct copy of the VF Loan is attached hereto as **Exhibit H**.

22      63.    While Rabo asserted that the VF Loan is secured by the Secured Real
23  Property and Personal Property, Rabo did not give notice to all of the borrowers under
24  the 2009 Credit Agreement or the 2018 Credit Agreement that Cody Easterday and
25  Easterday Farms were seeking the VF Loan and the VF Loan does not state that it is
26  secured by the 2009 Mortgage or the 2018 Mortgage.  In its August 4, 2022 summary

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   judgment ruling, the Court ruled that Parcel A does not secure the 2020 VF Loan. *See*

2   Dkt. No. 69

3       64.   On or about February 8, 2021, Easterday Farms filed for bankruptcy

4   protection in the United States Bankruptcy Court for the District of Eastern

5   Washington, Case No. 21-00176. By order dated July 26, 2022, the Bankruptcy Court

6   confirmed (the "Confirmation Order") the Third Modified Third Amended joint

7   Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms (the

8   "Plan"). On August 1, 2022, the effective date of the Plan occurred.

9       65.   Pursuant to the Bankruptcy Code and Washington State law, Easterday

10   Farms (and not individual creditors) hold any contribution claims against the partners

11   (including Karen Easterday) of Easterday Farms.

12       66.   Pursuant to the Plan and Confirmation Order, all allowed unsecured

13   claims against Easterday Farms -- including Rabo's claim -- will be paid in full (except

14   for post-petition interest and attorney fees).

15       67.   Pursuant to the Plan and Confirmation Order, all claims -- including

16   Rabo's claim against Easterday Farms – are completely satisfied.

17       68.   Pursuant to the Plan and Confirmation Order, Easterday Farms (and

18   Easterday Ranches, Inc.) released all claims and causes of action against the 2009

19   Borrowers, including any claims for contribution.

20       69.   Pursuant to the Plan and Confirmation Order, all entities are enjoined

21   from commencing or continuing any cause of action released pursuant to the Plan or

22   Confirmation Order.

23       70.   Rabo is demanding that Debby Easterday pay the VF Loan even though:

24   Debby Easterday did not apply for or sign the VF Loan and has no personal liability

25   for the VF Loan; the VF Loan was unsecured and did not reference either the 2009

26   Mortgage or the 2018 Mortgage; Rabo will be paid in full on the VF Loan (except for

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 9

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    post-petition interest and attorney fees) by Easterday Farms pursuant to the Plan;
2    Easterday Farms, and not Rabo, holds any contribution claim against Debby Easterday
3    and any such claim was satisfied by Debby Easterday pursuant to the Plan and
4    Confirmation Order; Easterday Farms, and not Rabo, holds any contribution claim
5    against Debby Easterday and Easterday Farms released any such claim pursuant to the
6    Plan and Confirmation Order; and Easterday Farms, and not Rabo, holds any
7    contribution claim against Debby Easterday and Easterday Farms is enjoined from
8    pursuing any such claim pursuant to the Plan and Confirmation Order. This reasoning
9    applies equally to defendant Cody Easterday to the extent Rabo is seeking to impose
10   liability upon him solely by virtue of his partnership interest in Easterday Farms.

11       71.    To the extent Debby Easterday (or Cody Easterday, solely by virtue of
12   his partnership interest in Easterday Farms) could ever be found liable for the VF Loan,
13   it could only be because Easterday Farms was a borrower on the VF Loan and she is a
14   partner of Easterday Farms. Because Easterday Farms filed for bankruptcy protection,
15   any interest owing on the VF Loan would be at the Federal Judgment Rate of interest
16   as of February 8, 2021, the date the bankruptcy case was filed.

17       72.    In June 2021, 3E Properties and Easterday Produce filed a complaint
18   against Rabo in the United States District Court for the Eastern District of Washington,
19   Case No. 2:21—v-00196 (the "3E Litigation"), asserting that Rabo's refusal to release
20   the UCCs and to acknowledge satisfaction of the 2009 Mortgage and the 2018
21   Mortgage violated Washington law, constituted a breach of contract, and sought to
22   clear title to the Secured Real Property.

23       73.    In August 2021, and only in response to the 3E Litigation, Rabo released
24   the UCCs and released the 2018 Mortgage and a portion of the 2009 Mortgage, but
25   continues to refuse to acknowledge satisfaction of the 2009 Mortgage and the 2018
26   Mortgage, and refuses to release the 2009 Property. A copy of Rabo's partial releases

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    of the Secured Real Property are attached hereto as **Exhibit I**.  In its August 4, 2022

2    summary judgment ruling, the Court ruled that Parcel A does not secure the 2020 VF

3    Loan.  *See* Dkt. No. 69

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

6    74.    Defendants re-allege paragraphs 49 through 73.

7    75.    Rabo's amended complaint fails to state a claim for which relief may be

8    granted.

## SECOND AFFIRMATIVE DEFENSE

### (Payment)

11    76.    Defendants re-allege paragraphs 49 through 73.

12    77.    All debts secured by the Secured Property have been paid in full and Rabo

13    accepted payment.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

16    78.    Defendants re-allege paragraphs 49 through 73.

17    79.    Rabo's conduct, including providing payoffs and refusing to release

18    collateral evidence its unclean hands and bar any recovery.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

21    80.    Defendants re-allege paragraphs 49 through 73.

22    81.    By accepting full payment, Rabo has waived any right to the relief sought

23    in the Amended Complaint.

## FIFTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

26    82.    Defendants re-allege paragraphs 49 through 73.

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    83.    To the extent the VF Loan is in fact associated with the 2009 Credit

2    Agreement or the 2018 Credit Agreement then Rabo's providing payoffs and accepting

3    payment represents a full and complete accord and satisfaction.

4    **SIXTH AFFIRMATIVE DEFENSE**

5    **(Lack of Standing)**

6    84.    Defendants reallege paragraphs 49-73

7    85.    Rabo is not the real party-in-interest, or otherwise lacks standing to assert

8    its First Cause of Action against Defendants to the extent such claim is based on

9    Defendants' position as a general partner of Easterday Farms.

10    **SEVENTH AFFIRMATIVE DEFENSE**

11    **(Release Pursuant to the Plan)**

12    86.    Defendants reallege paragraphs 49-73

13    87.    Pursuant to the Bankruptcy Code and Washington State law, Rabo's

14    claims against Cody Easterday (to the extent they derive from his capacity as a partner

15    Easterday Farms) and Debby Easterday, if any, belong to Easterday Farms, which

16    released all claims against Cody Easterday and Debby Easterday pursuant to the Plan

17    and Confirmation Order.

18    **EIGHT AFFIRMATIVE DEFENSE**

19    **(Satisfaction Pursuant to the Plan)**

20    88.    Defendants reallege paragraphs 49-73

21    89.    Pursuant to the Plan, Rabo's claim against Easterday Farms has been

22    completely satisfied such that Rabo has no claim against Cody Easterday (to the extent

23    they derive from his capacity as a partner Easterday Farms) and Debby Easterday.

24    Further, Cody Easterday's liability on the VF loan, if any, is co-extensive with the

25    liability of Easterday Farm, which liability has been adjudicated, liquidated, and paid,

26    pursuant to the Plan.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   <u>**NINTH AFFIRMATIVE DEFENSE**</u>

2   **(Release Pursuant to the Plan)**

3   90.    Defendants reallege paragraphs 49-73

4   91.    Pursuant to the Plan, Rabo is enjoined from commencing or continuing

5   this lawsuit because Rabo's claim against Easterday Farms and, in turn, Cody

6   Easterday (to the extent they derive from his capacity as a partner Easterday Farms)

7   and Debby Easterday, have been completely satisfied and released.

8   <u>**TENTH AFFIRMATIVE DEFENSE**</u>

9   **(Incorrect Interest Rate)**

10  92.    Defendants reallege paragraphs 49-73

11  93.    To the extent, if at all, Defendants are liable pursuant to Plaintiffs' First

12  Cause of Action, the Federal Judgment Rate or the base Contract Rate – and not the

13  higher rate of interest (21%) set out in the VF Loan – applies.

14  <u>**ELEVENTH AFFIRMATIVE DEFENSE**</u>

15  **(Violation of Automatic Stay)**

16  94.    Defendant realleges paragraphs 49 through 73

17  95.    Rabo's claims against Defendants in whole or in part violated the

18  automatic stay pursuant to 11 U.S.C. § 362(a) and are void.

19  <u>**FIRST COUNTERCLAIM**</u>

20  **(Breach of Contract)**

21  96.    Defendants re-allege paragraphs 49 through 95.

22  97.    Rabo's refusal to release the 2009 Mortgage, the 2018 Mortgage, and the

23  UCCs, despite being fully paid, caused the 2099 Borrowers financial losses.

24  98.    Rabo is on notice that its lien demonstrated by the 2009 Mortgage, should

25  be released.

26  99.    Rather than promptly releasing its mortgagee interests, Rabo intentionally

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 13

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1  and willfully decided, with apparent malicious intent, to maintain its mortgagee

2  interest in the Secured Real Property.

3     100.  Rabo has breached its agreements by failing and refusing to release its

4  interest in the 2009 Property.

5     101.  The 2009 Borrowers, including Defendants, have performed all

6  conditions precedent on their part.

7     102.  As a result of Rabo's breach, Defendants have been damaged in an

8  amount to be proven at trial.

9     103.  Pursuant to the 2009 Mortgage, a prevailing party under a dispute such as

10  this is entitled to recover their reasonable costs and attorneys' fees.

11     104.  As a result of Rabo's breach, Defendants are entitled to a judgment in

12  their favor in an amount to be proven at trial, together with their reasonable costs and

13  attorneys' fees incurred herein.

14                    **SECOND COUNTERCLAIM**

15         **(Failure to Acknowledge Satisfaction
          of Mortgage (RCW 61.16.030))**

16     105.  Defendants re-allege paragraphs 49 through 95.

17     106.  Rabo refuses to acknowledge full satisfaction of the 2009 Mortgage and

18  failed to promptly acknowledge full satisfaction of the 2018 Mortgage.

19     107.  More than sixty (60) days passed since a person with an interest in the

20  encumbered property demanded Rabo acknowledge satisfaction of the 2009 Mortgage

21  and the 2018 Mortgage.

22     108.  Rabo's failure to acknowledge satisfaction 2018 Mortgage within 60-

23  days and continuing failure to acknowledge satisfaction of the 2009 Mortgage

24  constitute violations of RCW 61.16.020.

25     109.  Pursuant to RCW 61.16.030, Defendants are entitled to an award of their

26  actual damages together with their reasonable costs and attorneys' fees, and an order

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 14

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   from the court acknowledging satisfaction of the mortgages.

2   ### THIRD COUNTERCLAIM

3   **(Attorney Fees and Costs)**

4   110.   Defendants re-allege paragraphs 49 through 95.

5   111.   Rabo's wrongful actions foreseeably led to litigation and the incurrence

6   by Defendants of attorney fees and costs.

7   112.   Rabo's lawsuit is unreasonable and unjustifiable and causes undue

8   expense and burden in light of the bankruptcy proceedings and Rabo's payment in full

9   therefrom. Rabo has refused all attempts at reasonable settlement or mediation.

10   113.   Defendants are entitled to recover their attorneys' fees and costs in

11   connection with this action, both at trial and on any appeal, pursuant to the terms of

12   the VF Loan, the RLOC, other contracts, and any applicable law.

13   ### FOURTH COUNTERCLAIM

14   **(Injunction)**

15   114.   Defendants re-allege paragraphs 49 through 95.

16   115.   Defendants are entitled to an injunction enjoining Rabo from continuing

17   or re-commencing this lawsuit against her pursuant to the terms of the Plan and

18   Confirmation Order.

19   ### PRAYER FOR RELIEF

20   WHEREFORE, Defendants pray for judgment in their favor against Rabo as

21   follows:

22   1)   On Plaintiff's Claims: Judgment in their favor on each of Rabo's claims

23       stated in the Amended Complaint;

24   2)   On their first Counterclaim:  A judgment in Defendants' favor based on

25       Rabo's breach of its agreements with the Owners, including Defendants,

26       and awarding damages in an amount to be proved at trial;

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 15

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   3)  On their second Counterclaim: A judgment in Defendants' favor finding

2       that Rabo's refusal to acknowledge satisfaction of the 2009 Mortgage and

3       2018 Mortgage was and is a violation of RCW 60.16.030 and awarding

4       Defendants their actual damages as proved at trial, together with their

5       reasonable attorneys' fees incurred herein; and an order acknowledging

6       full satisfaction of the 2009 Mortgage and the 2018 Mortgage;

7   4)  On their third Counterclaim: A judgment in Defendants' favor awarding

8       their reasonable attorneys' fees and costs incurred herein;

9   5)  On their fourth Counterclaim: an injunction prohibiting Rabo from

10       continuing or re-commencing this lawsuit;

11   6)  For an award of Defendants' reasonable costs and attorneys' fees incurred

12       herein; and

13   7)  For such further relief this court deems just and equitable.

14   Dated this 5th day of August, 2022.

15          SUSSMAN SHANK LLP

16          */s/ Jeffrey C. Misley*

17        _____
          Jeffrey C. Misley, WSBA #33397
          jmisley@sussmanshank.com

18          Steven F. Cade, *pro hac vice*
          scade@sussmanshank.com

19

20          *Attorneys for Defendants Cody and
          Debby Easterday*

21

22

23

24

25

26

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 16

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

**CERTIFICATE OF SERVICE**

I certify that on August 5, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system in this case.

/s/ Jeffrey C. Misley

Jeffrey C. Misley

ANSWER AND COUNTERCLAIMS OF
DEFENDANTS CODY AND DEBBY EASTERDAY -
Page 17

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

**Return Address:**
**Rabo Agrifinance, Inc.**
**10100 Trinity Parkway, Suite 400**
**Stockton, CA 95219**

Zona G. Lenhart, Auditor, Franklin County, WA.
AFN # **1740144** Recorded 09/18/2009 at 10:50 AM
DocType: MULTI 21 Page(s) Filing Instrument $268.00
Recorded at the request of: CHICAGO TITLE

CHICAGO TITLE INSURANCE

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)

1. Washington Mortgage, Security Agreement, Fixture Filing And Financing Statement

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page n/a of document

**Mortgagor(s)** (Last name, first name, initials)
1. Easterday, Gale
2. Easterday, Karen
3. Easterday, Cody
4. Easterday, Debby
5. Easterday, Jody
6. 3E Properties

Additional names on page n/a of document.

**Mortgagee(s)** (Last name first, then first name and initials)
1. Rabo Agrifinance, Inc., as collateral agent

Additional names on page two (2) of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

Blk 13 & 14 NP Addn

Additional legal is on page twenty (20) of document.

**Assessor's Property Tax Parcel/Account Number**    ☐ Assessor Tax # not yet assigned

112-021-017 and 113-130-040

The Auditor/Recorder will rely on the information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

Signature of Requesting Party

Initials

RETURN RECORDED DOCUMENT TO
RABO AGRIFINANCE, INC.
10100 TRINITY PARKWAY, SUITE 400
STOCKTON, CALIFORNIA 95219

Loan ▮▮▮3058

## WASHINGTON MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

### (REVOLVING CONSTRUCTION LINE OF CREDIT)

THIS MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT (REVOLVING LINE OF CREDIT) ("Mortgage") is made the 4th day of SEPTEMBER 2009, between 3E PROPERTIES, a Washington general partnership, GALE EASTERDAY and KAREN EASTERDAY, husband and wife, CODY EASTERDAY and DEBBY EASTERDAY, husband and wife, and JODY EASTERDAY, a married woman dealing with her sole and separate property, whose chief executive office or principal residence is P.O. BOX 2813, 1427 N. 1ST AVENUE, PASCO, WASHINGTON 99302, and all other persons executing this Mortgage (the "Mortgagor") and RABO AGRIFINANCE, INC., a corporation organized and existing under the laws of Delaware ("RAF"), whose address is P.O. Box 411995, St. Louis, Missouri 63141; RABOBANK, N.A. ("RNA"), whose address is P.O. Box 1845, El Centro, California 92244; and COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., "Rabobank Nederland" ("RN"), whose address is 245 Park Avenue, New York, New York 10167 (RAF, RNA, and RN, unless otherwise indicated, together with their successors and assigns, are hereinafter, individually or collectively, referred to as the "Mortgagee") and RAF as collateral agent (the "Collateral Agent") for the Mortgagee.

### NOTICE TO RECORDER

THIS DOCUMENT CONSTITUTES A FIXTURE FILING THAT SHALL HAVE AN EFFECTIVE PERIOD UNTIL THIS MORTGAGE IS RELEASED OF RECORD OR ITS EFFECTIVENESS OTHERWISE TERMINATES AS TO THE REAL PROPERTY.

THE MAXIMUM PRINCIPAL AMOUNT TO BE ADVANCED PURSUANT TO THE CONSTRUCTION NOTE DESCRIBED BELOW IS $9,500,000.00; HOWEVER, SUCH MAXIMUM AMOUNT MAY BE EXCEEDED BY PRINCIPAL ADVANCES MADE TO COMPLETE THE CONSTRUCTION OF IMPROVEMENTS UPON THE SUBJECT PROPERTY AND/OR TO PROTECT THE SECURITY OF THIS MORTGAGE.

2

Initials _____

**WHEREAS,** the Mortgagor is justly indebted to the Mortgagee in the aggregate sum of ELEVEN MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($11,500,000.00) with interest, or so much thereof as may be disbursed, all as set forth in that certain non-revolving line of credit promissory note and that certain credit agreement, both of even date herewith (which, together with any notes and/or guaranties and/or any Hedging Agreements containing Hedging Obligations  described below, are collectively referred to as the "Note"), which is comprised of a non-revolving construction line of credit in the amount of $9,500,000.00 maturing OCTOBER 1, 2020 and an operating revolving line of credit loan in the amount of $2,000,000.00 maturing August 31, 2010.

**NON-REVOLVING LINE OF CREDIT.  Specifically, and without limitation, this Mortgage secures a non-revolving construction line of credit (which may have a variable rate of interest) which obligates Collateral Agent or Mortgagee to make advances to Mortgagor so long as Mortgagor complies with all the terms of the Note and Building and Loan Agreement dated as of September 4, 2009, and the line of credit has not been terminated, suspended or cancelled.**

**REVOLVING LINE OF CREDIT.  Specifically,  and without limitation, this Mortgage also secures a revolving line of credit (which may have a variable rate of interest) which obligates Collateral Agent or Mortgagee to make advances to Mortgagor so long as Mortgagor complies with all the terms of the Note and the line of credit has not been terminated, suspended or cancelled.    Funds may be advanced by Collateral Agent or Mortgagee, repaid, and subsequently readvanced.  The unpaid balance of the revolving line of credit may at certain times be lower than the amount shown or zero.  A zero balance does not terminate the line of credit or terminate Collateral Agent's or Mortgagee's obligation to advance funds to Mortgagor.  Therefore, the lien of this Mortgage will remain in full force and effect notwithstanding any zero balance.**

**FUTURE ADVANCES**. With respect to the non-revolving construction line of credit in the amount of $9,500,000.00, a certain amount has been withheld by the mortgagee at the time of closing for future disbursement (hereinafter called "Future Advance(s)").  Future Advances shall be made only upon compliance with the following conditions at the time of each Future Advance: (a) The mortgagor shall be the Owner of the premises described in this mortgage; (b) There shall be no uncured default in this mortgage nor in the note which it secures; (c) Each Future Advance shall be secured by this mortgage and shall constitute a valid first lien on the mortgaged premises, as evidenced by such title searches, abstract continuations, opinions of counsel, title policy endorsements or other evidence of title as the mortgagee may require; (d) All expenses of title searches, abstract continuations, opinions of title and title policy endorsements required by the mortgagee shall be paid by the mortgagor; (e) The mortgagor shall not be affected by any insolvency proceedings nor shall the mortgagor have made an assignment for the benefit of creditors;  (f) The mortgagee shall not be obliged to make  any Future Advance(s) subsequent to the October 1, 2010; and (g) Not less than thirty days' written notice shall have been given to the mortgagee prior to the intended date of each Future Advance.

3

Initials

NOW, THEREFORE, THIS MORTGAGE WITNESSETH that, to secure the payment of the principal of and interest on the Note, along with (1) payment of the entire indebtedness and other obligations evidenced by the following promissory note(s), and/or guaranty(s) executed by Mortgagor to the applicable Mortgagee or order and all modifications, amendments, replacements, substitutions, extensions and renewals thereof along with all Hedging Obligations:

[ ]    The following additional new or existing Promissory Notes:

- Note dated n/a in the stated principal amount of n/a Dollars
- Note dated n/a in the stated principal amount of n/a Dollars

[ ]    A guaranty or guaranties dated as of n/a, guaranteeing the indebtedness of the borrowers as defined in the guaranty or guaranties.

(2) the payment of such additional loans or advances and such other debts, obligations and liabilities of every kind and character, of Mortgagor or the maker of the Note, evidenced by a promissory note, guaranty or otherwise, whether one or more, now existing or arising in the future, in favor of the applicable Mortgagee, whether direct or indirect, absolute or contingent, or originally payable to the applicable Mortgagee or any other person; PROVIDED HOWEVER, THAT, such other additional loans, advances, debts, obligations and liabilities shall be secured by this Mortgage only if the promissory note, guaranty, or other document evidencing such shall recite that it is to be secured by this Mortgage; and provided, however, if the Property includes Mortgagor's principal dwelling or is otherwise a one to four family dwelling, the Property will not secure any future loan, advance, debt, obligation or liability taken or incurred principally for personal, family or household purposes; (3) the payment of any substitute notes, renewals, reamortizations, conversion agreements and extensions of all indebtedness secured by this Mortgage; (4) payment and performance of each agreement of Mortgagor in this Mortgage; (5) payment of all sums expended or advanced by Collateral Agent or Mortgagee to protect the security of this Mortgage, said real property or said collateral, with interest thereon at the rate per annum after default or maturity set forth in said Note or any Credit Agreement; (6) the words "Hedging Obligations" mean all obligations, indebtedness, and liabilities of Mortgagor to Mortgagee, or any other affiliate of Mortgagee, arising pursuant to any Hedging Agreements, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, joint, several, joint and several, including without limitation, all fees, costs, expenses (including attorney's fees and expenses) provided for in such Hedging Agreements. The words "Hedging Agreements" mean any interest rate swap, interest rate cap, interest rate collars or other similar agreement or instrument entered into by Mortgagee, or any other affiliate of Mortgagee, with Mortgagor, for the purpose of hedging interest rate risk; and (7) all obligations as defined in or provided for in any Note , and in consideration of the premises, the Mortgagor by these presents does grant, bargain, sell, convey, transfer, assign, mortgage, pledge, warrant and confirm unto the Collateral Agent for the benefit of Mortgagee all the property hereinafter described, to wit:

I. The real property located in FRANKLIN County, Washington, briefly described as follows (the "Real Estate"): BLK 13 & 14 NP Addn

4        initials

Assessor's property tax parcel or account numbers: ███1-017 and ███0-040

See attached Exhibit A which is incorporated herein by reference.

**TOGETHER WITH** (1) all easements, rights-of-way and rights appurtenant to said Real Estate or used in connection therewith or as a means of access thereto; (2) all tenements, hereditaments and appurtenances thereto, including all water, water rights and drainage rights appertaining thereto; (3) Mortgagor's interest as lessor in all leases affecting said Real Estate; (4) all buildings, structures, improvements, fixtures, attachments, appliances, irrigation equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on said Real Estate which are real property, and all substitutions, replacements, additions and accessions thereof or thereto; (5) all rents, issues, profits, royalties, bonuses, income and other benefits derived from or produced by said Real Estate (subject, however, to the assignment of rents and profits to Collateral Agent or Mortgagee herein); and (6) all right, title, estate, interest, and other claim or demand, including, without limitation, all claims or demands to the proceeds of all insurance now or hereafter in effect with respect to said Real Estate, which Mortgagor now has or may hereafter acquire in said Real Estate, and all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of said Real Estate.

II. Any and all fruit or nut bearing bushes, trees or vines presently or hereafter located on the above described Real Estate. Mortgagor hereby agrees, acknowledges and confirms that such fruit or nut bearing bushes, trees or vines are part of the "real estate" comprising the above described Real Estate and will remain a part of the above described Real Estate throughout the term of the loan made by Mortgagee to Mortgagor that is secured by this Mortgage.

III. The Mortgagor's interest as lessor in all leases (including, but not limited to, oil, gas and mineral leases) now or hereafter affecting the above described Real Estate or any part thereof.

IV. Certificates numbered n/a representing 0 shares of the capital stock of n/a and the water rights represented thereby (if no entries, this granting clause is inapplicable).

**AND ALSO,** Mortgagor, as debtor, irrevocably grants and assigns to Collateral Agent for the benefit of Mortgagee, as secured party, a security interest in all of the following collateral which is personal property now or hereafter owned by Mortgagor or in which Mortgagor now or hereafter has any rights and which is now or hereafter located on or at, or affixed or attached to, or produced from, or used in connection with said Real Estate, including but not limited to: All personal property described in Exhibit B attached hereto and made a part hereof; and articles of personal or mixed property of every kind and nature whatsoever, including, without limitation, all (a) goods, including without limitation, equipment and machinery (excluding, however, automobiles, trucks, tractors, trailers, wheeled vehicles, planting and tillage equipment), watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, fences, fixtures, fittings, appliances, farm products, crops growing or to be

Initials _DL / JOL_

grown, timber standing or to be cut, minerals or the like (including oil and gas), raw materials, inventory and work in process; (b) all water stock and water rights and, to the extent listed on the attached Exhibit "B", all investment property, including without limitation, certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts, including all stock, bonds and commodities contracts; (c) all permits and licenses used in the operation of the Real Estate and, to the extent listed on the attached Exhibit "B", general intangibles, including without limitation payment intangibles and software;  (d) accounts, including without limitation all of Mortgagor's right to any payment arising out of the sale, lease or license of all kinds of tangible and intangible personal property, contract rights (whether now existing or arising in the future), general intangibles, instruments, documents, chattel paper, accounts receivable, deposits, fees, charges and other payments, income and cash receipts that are otherwise described in this paragraph; (e) personal property of the same general kind or class as otherwise described in this paragraph which Mortgagor may now own or hereafter acquire, wherever located, used or usable in the operation of or relating to the Real Estate; and all products and proceeds from the sale or other disposal thereof, including, without limitation, all payments under any insurance policies, substitutions and replacements, additions, accessions of or to said collateral  and any indemnity, warranty or guaranty relating to any of the foregoing.   All of the foregoing property shall  hereinafter be collectively referred to as the "Collateral." The Real Estate, the items in paragraphs II, III and IV above, and the Collateral shall  hereinafter be collectively referred to as the "Property."  PROVIDED HOWEVER, that nothing in this Mortgage shall prevent Mortgagor from obtaining secured crop financing which may include the perfection of a lien by the crop lender on the crops growing or to be grown for a period not to exceed the beginning of the next crop year.  If Mortgagor exercises its right to place a single crop lien on the crops grown or to be grown on the Real Estate, such crop lien shall automatically be a first superior lien to the lien on such crop created hereby without the need for any consent or subordination from Collateral Agent or Mortgagee.

**TO HAVE AND TO HOLD** the same unto the Collateral Agent for the benefit of Mortgagee, their successors and assigns, forever.

**PROVIDED, ALWAYS,** that if the Mortgagor, his heirs, representatives, successors and assigns, shall pay unto the Mortgagee, its successors and assigns, the said sum of money mentioned in the Note and the interest thereon at the times and place and in the manner specified in the Note or Credit Agreement, and all other sums that may become due and owing to the Collateral Agent or Mortgagee pursuant to any of the terms, covenants and conditions hereof, and perform all the conditions and covenants contained in this Mortgage, then these presents and the estate hereby granted shall cease, determine and be void and shall be released by the Collateral Agent or Mortgagee at the expense of the Mortgagor, otherwise to remain in full force and effect.

**AND SUBJECT** to the covenants and conditions hereinafter set forth.

**FIRST.** The Mortgagor hereby covenants and agrees, to the extent permitted by law, as follows:  **(a)** to pay promptly when due the principal and interest and other sums of money provided for in the Note, Credit Agreement and in this Mortgage, or either;  **(b)** to pay all taxes, assessments and other charges (including ditch, canal, reservoir, or other water charges, taxes

Initials _DC_ _Hsc_

or assessments) imposed by law upon the Property, the Collateral Agent's or Mortgagee's interest therein, or upon the Mortgage or the Note; provided however, in the event of the passage of any law changing the laws for the taxation of mortgages or debts secured by mortgages so as to affect this Mortgage, the entire indebtedness secured hereby shall, at the option of the Collateral Agent or Mortgagee, become due and payable; (c) to keep the Property and improvements on the Real Estate in good condition and repair and not to commit or suffer waste thereof, and except as authorized in any schedule annexed hereto and forming a part hereof, neither to remove nor permit the removal of any timber, buildings, oil, gas, minerals, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of the Collateral Agent or Mortgagee; (d) to maintain and deliver to the Collateral Agent or Mortgagee policies of insurance against such hazards on the buildings now or hereafter located on the Property as the Collateral Agent or Mortgagee may from time to time require, in such companies and amounts and with such loss payable clauses as shall be satisfactory to the Collateral Agent or Mortgagee; in the event of loss the Collateral Agent or Mortgagee is expressly authorized to settle or compromise claims under said policies and the proceeds shall be paid to the Collateral Agent and/or Mortgagee who may apply same or any part thereof on the indebtedness secured hereby or towards the reconstruction or repair of said buildings or release same to the Mortgagor; (e) to pay any lien, claim or charge against the Real Estate which might take precedence over the lien hereof; (f) to pay on demand all legal expenses, title searches, or attorney's fees reasonably incurred or paid by the Collateral Agent or Mortgagee to collect the Note or foreclose or protect the lien of the Mortgage; (g) in the event Mortgagor shall fail to comply with the provisions of (a) through (f) above, the Collateral Agent or Mortgagee may take such action as is necessary to remedy such failure and all sums paid by the Collateral Agent or Mortgagee pursuant hereto with interest at the rate hereinafter provided shall constitute a lien upon the Property, shall be secured by this Mortgage, and shall be immediately due and repayable to the Collateral Agent or Mortgagee; (h) not to sell the Real Estate or any portion thereof, or, if the Mortgagor is a corporation not more than 0.00% of its corporate stock shall be sold, traded or disposed of to persons other than the present owners prior to the time the indebtedness secured hereby shall have been reduced (exclusive of prepayments not permitted by the Note) to $0.00; (i) if the Real Estate or any portion thereof shall be taken or damaged under the power of eminent domain, the award for any property so taken or damaged (including severance damages to the remaining property) shall be paid to the Collateral Agent or Mortgagee and applied in full or in part at the option of the Collateral Agent or Mortgagee in reduction of the indebtedness hereby secured; (j) the Collateral Agent or Mortgagee shall have the right to inspect the Property at such reasonable times as the Collateral Agent or Mortgagee may desire to determine the Mortgagor's compliance with the covenants contained in this Mortgage; (k) the Collateral Agent or Mortgagee may release from the lien hereof any part of the above described Property without requiring any consideration therefor, and (l) Mortgagor is lawfully seized of said Real Estate in fee simple, the same is free from encumbrances except as may otherwise be specifically noted herein or waived in writing by the Collateral Agent or Mortgagee, Mortgagor will execute or procure any further necessary assurances of title and does hereby warrant generally the title to said Real Estate and will forever defend the same against the claims and demands of all persons whomsoever, and his separate estate, whether vested, contingent or in expectancy, is hereby conveyed and he does hereby expressly waive, release and relinquish all rights and benefits of any homestead, dower, curtesy, appraisement, exemption and stay laws of this state. It is agreed that the interest provided for in sub-section

7                                                                                   Initials _____

(g) above shall be the rate set forth in the Note or Credit Agreement as the interest rate in effect after an event of default or the highest lawful rate permitted by contract under applicable law, whichever is less.

**SECOND.** Mortgagor agrees that all of said Property which is erected on, affixed or attached to, or located in or on said Real Estate shall be deemed to be real property and a part of said real Estate. No fixtures or equipment (including watering and irrigation apparatus) shall be removed from said Real Estate without the prior written consent of Collateral Agent or Mortgagee, except that Mortgagor shall have the right, without such consent, to remove and dispose of free from the security interest hereof such fixtures and equipment as may from time to time become worn out or obsolete, provided that Mortgagor shall, simultaneously with or prior to such removal, replace such removed fixtures or equipment with replacement fixtures or equipment having a value, quality and utility at least equal to the removed fixtures or equipment. All agreements of Mortgagor herein, and all rights of Collateral Agent or Mortgagee herein, relating to said Real Estate shall apply to said Property whether or not expressly referred to herein. This Mortgage is a financing statement and covers property which is or is to become fixtures and is to be recorded in the real estate records. Mortgagor is the record owner of said Real Estate.

**THIRD.** If the Mortgagor shall default in the payment of the Note or in the performance of any of the covenants or agreements herein or in the Note, Credit Agreement or in any agreement collateral hereto contained, or if the then owner of the Property shall make an assignment for the benefit of creditors or shall file a petition for relief under the Bankruptcy Code of 1978, as amended, or under any similar statute, or shall be adjudicated bankrupt or insolvent, or if any receiver, liquidator or trustee shall be appointed for such then owner or any of his property, then in such event, the entire indebtedness hereby secured shall, at the option of the Collateral Agent or Mortgagee and without notice to the Mortgagor, be due and collectible at once by judicial foreclosure proceedings or as otherwise provided by law, or, when available under applicable statutes or rules of practice, by advertisement and sale, and in such an event this provision shall be deemed as authorizing and constituting a power of sale as mentioned in said statutes or rules; that in addition to the rights and remedies herein, the Collateral Agent or Mortgagee is hereby authorized and empowered at its option to exercise forthwith and from time to time any further rights and remedies available to the Collateral Agent or Mortgagee under the laws of the state wherein the Property is situate, such as the right to collect the rents, issues and profits, or to have a receiver appointed to collect the same.

**FOURTH.** The following schedules are annexed hereto and made a part hereof (if no entry, this section is inapplicable): Exhibit "A" Legal Description and Exhibit "B" Personal Property.

**FIFTH.** Mortgagor acknowledges that his/her current financial position is an important factor in Mortgagee's decision to advance the funds represented by the aforementioned Note. Mortgagor therefore has agreed, in order to provide assurance to Collateral Agent and Mortgagee with regard to Mortgagor's financial position, that it shall be an event of default for Mortgagor to allow any lien or encumbrance other than this Mortgage and the lien for taxes which are not yet due and payable to be placed on all or any part of the Real Estate described

8

Initials

above and allowed to remain a lien for 30 day(s) EXCEPT a lien junior and inferior to this Mortgage may be placed on all or a part of said Real Estate in favor of N/A in a principal amount not to exceed ZERO DOLLARS ($0) to be placed of record no later than N/A.

**SIXTH.** The covenants herein contained shall bind, and the benefits and advantages thereof shall inure to, the respective heirs, executors, administrators, successors, and assigns of the parties hereto. In this Mortgage, unless the context otherwise requires, words in the singular number include the plural and in the plural include the singular, and words in the masculine gender include the feminine and the neuter. Whenever the term "Mortgagor" shall include more than one person or entity, their liability hereunder shall be joint and several.

**SEVENTH.** Mortgagor shall not suffer any waste of the Property and will not permit or conduct either the generation, treatment, storage or disposal of hazardous waste, as defined in the Resource Conservation and Recovery Act, or the disposal on the Real Estate of petroleum or any hazardous substance, as defined in the Comprehensive Environmental Response, Compensation, and Liability Act, and will perform all remedial actions reasonably necessary as the result of the presence of any such hazardous wastes, petroleum or hazardous substances on, at or near the Real Estate. Notwithstanding any terms of the loan documents to the contrary, Mortgagor shall be personally liable for and hereby agrees to defend, indemnify, and hold Mortgagee, its directors, officers, employees, agents, successors and assigns harmless from all loss, cost, damage, claim, liability and expense in connection with the falsity in any material respect of the covenants contained herein or in connection with any and all Pre-Foreclosure Transfer Environmental Losses, including but not limited to: (i) loss, liability, damage, expense or claim arising from the imposition or recording of a lien, the incurring of costs of required repairs, clean up or detoxification and removal under any Laws with respect to the Property or liability to any third party in connection with any violation of Laws, (ii) other loss, liability, damage, expense or claim which may be incurred by or asserted against Mortgagee directly or indirectly resulting from the presence on or under, or the discharge, emission or release from the Property into or upon the land, atmosphere, or any watercourse, body of surface or subsurface water or wetland, arising from the installation, use, generation, manufacture, treatment, handling, refining, production, processing, storage, removal, clean up or disposal of any Hazardous Materials or Wastes whether or not caused by Mortgagor (all of the foregoing are hereafter referred to as "Hazardous Substance Activity"), (iii) loss of value of the Property as a result of the presence of Hazardous Materials or Wastes in, on, or under the Premises or any such lien, clean up, detoxification, loss, liability, damage, expense or claim or a failure or defect in title occasioned by any Hazardous Materials or Wastes or Laws and (iv) foreseeable and unforeseeable incidental and consequential damages. As used in this paragraph, "Pre-Foreclosure Transfer Environmental Losses" means losses suffered or incurred by Mortgagee prior to a Foreclosure Transfer (defined below) that arise out of or result from (i) the occurrence, at any time prior to a Foreclosure Transfer, of any Hazardous Substance Activity; (ii) any investigation, inquiry, order, hearing, action, or other proceeding by or before any governmental agency in connection with any Hazardous Substance Activity occurring or allegedly occurring at any time prior to a Foreclosure Transfer; or (iii) any claim, demand or cause of action, or any action or other proceeding, whether meritorious or not, brought or asserted against Mortgagee which relates to, arises from or is based on any of the matters described in clauses (i), or (ii) hereof, or any allegation of any such matters. As used in this

9                                                      Initials _____

paragraph, the phrase "at any time prior to a Foreclosure Transfer" includes the period between the time of Mortgagor's disposition of the Premises and the time of a Foreclosure Transfer (in the event that Mortgagor disposes of the Premises prior to a Foreclosure Transfer), as well as the period during which Mortgagor holds title to the Premises. A "Foreclosure Transfer" means the transfer of title to all or any part of the Premises at a foreclosure sale under this Deed of Trust, either pursuant to judicial decree or the power of sale contained in the Deed of Trust, or by deed in lieu of such foreclosure. As used in this paragraph, the phrase "Laws" means any federal, state or local laws, rules or regulations (whether now existing or hereinafter enacted or promulgated) including, without limitation, the Clean Water Act, 33 U.S.C. §§ 1251 et seq., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq., and the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901 et seq., and any similar state laws, as well as any judicial or administrative interpretation thereof, including any judicial or administrative orders or judgments. As used in this paragraph, the term "Hazardous Materials or Wastes" shall mean any hazardous or toxic materials, pollutants, chemicals, mold or contaminants, including without limitation asbestos, polychlorinated biphenyls (PCBs) and petroleum products as defined, determined or identified as such in any Laws, as defined herein. Mortgagor shall also be liable for compliance (and for costs associated therewith) with any directive or order by any governmental entity relating to the presence of any such hazardous waste, petroleum or hazardous substance on, at, or near the Real Estate. Mortgagor will deliver promptly to the Mortgagee (i) copies of any documents received from the United States Environmental Protection Agency and/or any state, county or municipal environmental or health agency concerning the Mortgagor's operations upon the Real Estate; and (ii) copies of any documents submitted by the Mortgagor to the United States Environmental Protection Agency and/or any state, county or municipal environmental or health agency concerning operations on the Real Estate. Mortgagor shall also be liable for compliance (and for costs associated therewith) with any directive or order by any governmental entity relating to the presence of any such hazardous waste, petroleum or hazardous substance on, at, or near the Real Estate. Mortgagor will deliver promptly to the Collateral Agent or Mortgagee (i) copies of any documents received from the United States Environmental Protection Agency and/or any state, county or municipal environmental or health agency concerning the Mortgagor's operations upon the Real Estate and (ii) copies of any documents submitted by the Mortgagor to the United States Environmental Protection Agency and/or any state, county or municipal environmental or health agency concerning operations on the Real Estate.

EIGHTH.  Mortgagor, its successors and assigns and each of them, represent and warrant that the Property involved in this transaction does not represent the proceeds of some form of unlawful activity under any state, federal or foreign law.

NINTH.  This Mortgage constitutes a security agreement within the meaning of the Uniform Commercial Code ("UCC") as in effect from time to time in the state where the Collateral is located except to the extent the UCC provides for the application of the law of the state of location of the Mortgagor in which event the UCC as in effect from time to time, in such state shall apply, with respect to any part of the Property which may now or hereafter be characterized by law as personal property, and in the event of any default under this Mortgage which continues beyond the applicable notice and cure period, if any, the Collateral Agent or

10

Initials D. _____

Mortgagee shall have all the rights and remedies of a secured party under the UCC as in effect from time to time, as well as all other rights and remedies available hereunder or under this Mortgage at law or in equity. Mortgagor authorizes Collateral Agent or Mortgagee to file one or more financing statements and continuation statements, at Mortgagor's expense, describing the Collateral and hereby ratifies any such financing statement or continuation statement previously filed by Collateral Agent or Mortgagee. Mortgagor will, from time to time, within ten (10) days after request by the Collateral Agent or Mortgagee, execute, acknowledge and deliver any document that the Collateral Agent or Mortgagee might request in order to perfect, protect, preserve, continue, extend or maintain the security interest created by and the priority of this Mortgage and will, on demand, pay any expenses incurred by the Collateral Agent or Mortgagee in the preparation, execution and filing of any such documents. Mortgagor represents and warrants that: (a) all Collateral is located in the state in which the Real Estate is located; (b) Mortgagor's chief executive office or principal residence is Mortgagor's address set forth in the first paragraph of this Mortgage; (c) Mortgagor's state of organization, if applicable, is as set forth in the first paragraph of this Mortgage; and (d) Mortgagor's exact legal name is as set forth in the first paragraph of this Mortgage.

TENTH. This Mortgage shall be governed by and construed and interpreted in accordance with the internal laws of the state in which the Real Estate is located, except and only to the extent the UCC provides otherwise.

ELEVENTH. Mortgagor, its successors and assigns and each of them, represent and warrant that either:

(a)    The Property does not contain and will not be cultivated to grow any variety of perennial crops, or plants, vines, trees, nuts and/or fruit that produce crops in more than one crop year (hereinafter "Permanent Plantings") that is or may be subject to intellectual property rights under U.S. or foreign patent, copyright or trademark laws, the Plant Variety Protection Act or similar laws or subject to license from the holder of any such intellectual property rights (all of the foregoing being hereinafter referred to as "IP Rights"); or

(b)    To the extent the Property does contain or in the future is cultivated to grow any variety of Permanent Plantings that is or may be subject to IP Rights, Mortgagor represents and warrants that Mortgagor is or shall be the owner of such IP Rights free and clear of any claim, right, title, interest or lien of any other person, Mortgagor has or shall notify Mortgagee in writing of the existence of such IP Rights and Mortgagor does hereby, has or shall grant Mortgagee a security interest in and a lien upon all of Mortgagor's right, title and interest in, to and under, whether now owned or hereafter created in IP Rights, all cash and non-cash proceeds and products of the IP Rights and all causes of action, past, present and future for infringement, misappropriation or dilution of any of the IP Rights or unfair competition regarding the same.

TWELVETH. THE NOTE EVIDENCES A DEBT CREATED BY ONE OR MORE DISBURSEMENTS MADE BY THE MORTGAGEE TO THE MORTGAGOR TO FINANCE THE COST OF THE CONSTRUCTION OF CERTAIN IMPROVEMENTS UPON THE REAL ESTATE IN ACCORDANCE WITH THE PROVISIONS OF A BUILDING AND LOAN AGREEMENT OF EVEN DATE HEREWITH BETWEEN THE MORTGAGOR AND THE MORTGAGEE (THE

11                                                         in. als

"LOAN AGREEMENT"), AND THIS MORTGAGE IS A CONSTRUCTION MORTGAGE AS SUCH TERM IS DEFINED IN SECTION 9-334(H) OF THE UNIFORM COMMERCIAL CODE AS ADOPTED BY THE STATE OF WASHINGTON. THE TERMS AND CONDITIONS RECITED AND SET FORTH IN THE LOAN AGREEMENT ARE FULLY INCORPORATED IN THIS MORTGAGE AND MADE A PART HEREOF, AND A DEFAULT UNDER ANY OF THE CONDITIONS OR PROVISIONS OF THE LOAN AGREEMENT SHALL CONSTITUTE A DEFAULT HEREUNDER.  UPON THE OCCURRENCE OF ANY SUCH DEFAULT, THE HOLDER OF THE NOTE MAY AT ITS OPTION DECLARE THE INDEBTEDNESS SECURED HEREBY IMMEDIATELY DUE AND PAYABLE, OR COMPLETE THE CONSTRUCTION OF SAID IMPROVEMENTS AND ENTER INTO THE NECESSARY CONTRACTS THEREFOR, IN WHICH CASE ALL MONEY EXPENDED SHALL BE SO MUCH ADDITIONAL INDEBTEDNESS SECURED HEREBY AND ANY MONEY EXPENDED IN EXCESS OF THE AMOUNT OF THE ORIGINAL PRINCIPAL SHALL BE IMMEDIATELY DUE AND PAYABLE WITH INTEREST UNTIL PAID AT THE APPLICABLE RATE OF INTEREST SET FORTH IN THE NOTE.  UPON COMPLETION OF THE IMPROVEMENTS DESCRIBED IN THE LOAN AGREEMENT FREE AND CLEAR OF MECHANIC'S LIEN CLAIMS, AND UPON COMPLIANCE WITH ALL OF THE TERMS, CONDITIONS AND COVENANTS OF THE LOAN AGREEMENT, THE LOAN AGREEMENT AND THE TERMS OF THIS SECTION SHALL BECOME NULL AND VOID AND OF NO FURTHER FORCE AND EFFECT.  IN THE EVENT OF A CONFLICT BETWEEN THE TERMS OF THE LOAN AGREEMENT AND THIS MORTGAGE, THE PROVISIONS OF THE LOAN AGREEMENT SHALL APPLY AND TAKE PRECEDENCE OVER THIS MORTGAGE.

THIRTEENTH.        Notwithstanding anything to the contrary contained herein, the parties agree that: (a) the Property secure the Hedging Obligations on a pari passu basis with the other indebtedness evidenced by the Note; and (b) in the event of any foreclosure or other realization on any Property, for purposes of determining the amount of Property proceeds allocable to the Beneficiary who is party to any Hedging Obligation ("Swap Lender"), the amount of the Hedging Obligations then due such Swap Lender shall be treated as if such Hedging Obligations were unpaid principal under the Note.

FOURTEENTH.        Easterday Farms Produce, Co., a Washington corporation is executing this document solely for the purpose of granting a security interest in personal property to Mortgagee and to obligate itself to the Security Agreement and Financing Statement portions hereof. Easterday Farms Produce, Co. does not own an interest in the Real Estate and therefore does not make any representations or warranties with regard to the Real Estate, but only with regard to the personal property herein.

**ORAL AGREEMENTS, PROMISES OR COMMITMENTS TO:  (1) LOAN MONEY, (2) EXTEND CREDIT, (3) MODIFY OR AMEND ANY TERMS OF THE LOAN DOCUMENTS, (4) RELEASE ANY GUARANTOR, (5) FORBEAR FROM ENFORCING REPAYMENT OF THE LOAN OR THE EXERCISE OF ANY REMEDY UNDER THE LOAN DOCUMENTS, OR (6) MAKE ANY OTHER FINANCIAL ACCOMMODATION PERTAINING TO THE LOAN ARE ALL UNENFORCEABLE UNDER WASHINGTON LAW.**

12

Initials

IN WITNESS WHEREOF, each of the undersigned has signed, sealed and delivered this Mortgage as of the day, month and year first above written.

Easterday Farms Produce, Co., a Washington corporation

By: _____
Jody Easterday, President

3E PROPERTIES, a Washington general partnership

By: _____
Jody Easterday, Partner

By: _____
Cody A. Easterday, Partner

By: _____
Debby Easterday, Partner

By: _____
Gale A. Easterday, Partner

By: _____
Karen L. Easterday, Partner

_____
Gale Easterday

_____
Karen Easterday

_____
Cody Easterday

13                              Initials _____

_____

Debby Easterday

_____

Jody Easterday

STATE OF WASHINGTON }
                    } ss.
COUNTY OF Benton    }

On this 14th day of September, 2009, before me the undersigned notary public in and for the State of Washington, duly commissioned and sworn, personally appeared Jody Easterday, President of the Easterday Farms Produce Co., a Washington Corporation, and the individual that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said entity, for the uses and purposes therein mention, and on oath stated that they were authorized to execute the said instrument.

Witness my hand and official seal hereto affixed the day and year first above written.

_____
Bonnie Thompson
Notary Public in and for the State of Washington
Residing at Kennewick.    My commission expires: 4-30-2011.

STATE OF WASHINGTON }
                    } ss.
COUNTY OF Benton    }

On this 14th day of September, 2009, before me the undersigned notary public in and for the State of Washington, duly commissioned and sworn, personally appeared Jody Easterday, Cody A. Easterday, Debby Easterday, Gale A. Easterday and Karen L. Easterday, Partners of 3E Properties, a Washington general partnership and the individuals that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said entity, for the uses and purposes therein mention, and on oath stated that they were authorized to execute the said instrument.

Witness my hand and official seal hereto affixed the day and year first above written.

_____
Bonnie Thompson
Notary Public in and for the State of Washington
Residing at Kennewick.    My commission expires: 4-30-2011.

14

Initials

STATE OF WASHINGTON     )
                             ) SS:

COUNTY OF __Benton_____ )

    I, __Bonnie Thompson_____, a notary public in and for said County and State, do hereby certify that on this _14th_ day of __September__, 20_09_, personally appeared before me the within named __Gale A. Easterday_____ to me known to be the individual(s) described in and who executed and whose name(s) is (are) subscribed to the within and foregoing instrument, and duly acknowledged to me that __he__ signed and executed the same as __his__ free and voluntary act and deed, for the uses and purposes therein mentioned.

    GIVEN under my hand and official seal, the day and year in this certificate first above written.

(SEAL)

                                         _Bonnie Thompson_
                                       Notary Public

My commission expires:   4-30-2011

[If executed by corporation, corporate form of acknowledgment must be attached]

Recorded at the request of:

                                             Initials __De HdE__

15

STATE OF WASHINGTON )
) SS:
COUNTY OF ___Benton_____ )

I, ___Bonnie Thompson_____, a notary public in and for said County and State, do hereby certify that on this 14th day of ___September_____, 2009, personally appeared before me the within named _Karen L. Easterday_____ to me known to be the individual(s) described in and who executed and whose name(s) is (are) subscribed to the within and foregoing instrument, and duly acknowledged to me that __she___ signed and executed the same as __her___ free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal, the day and year in this certificate first above written.

(SEAL)

Bonnie Thompson
Notary Public

My commission expires: 4-30-2011.

16

Initials _____

STATE OF WASHINGTON )
) SS:
COUNTY OF __Benton_____ )

  I, __Bonnie Thompson_____, a notary public in and for said County and State, do hereby certify that on this _14th_ day of __September_____, 20_11___, personally appeared before me the within named __Cody A. Easterday_____ to me known to be the individual(s) described in and who executed and whose name(s) is (are) subscribed to the within and foregoing instrument, and duly acknowledged to me that _he_____ signed and executed the same as _his____ free and voluntary act and deed, for the uses and purposes therein mentioned.

  GIVEN under my hand and official seal, the day and year in this certificate first above written.

(SEAL)

_Bonnie Thompson_____
Notary Public

My commission expires: 4-30-2011.

Initials

STATE OF WASHINGTON           )
                              ) SS:
COUNTY OF __Benton_____  )

I, __Bonnie Thompson_____, a notary public in and for said County and State, do hereby certify that on this __14th__ day of __September_____, __2011__, personally appeared before me the within named __Debby Easterday_____ to me known to be the individual(s) described in and who executed and whose name(s) is (are) subscribed to the within and foregoing instrument, and duly acknowledged to me that __she__ signed and executed the same as __her__ free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal, the day and year in this certificate first above written.

(SEAL)

                                        _Bonnie Thompson_____
                                        Notary Public

My commission expires:  4-30-2011 .

18

Initials

STATE OF WASHINGTON          )
                             ) SS:
COUNTY OF __Benton__         )

    I, __Bonnie Thompson_____, a notary public in and for said County and State, do hereby certify that on this 14th day of ___September,_____, 20 09 , personally appeared before me the within named __Jody Easterday_____ to me known to be the individual(s) described in and who executed and whose name(s) is (are) subscribed to the within and foregoing instrument, and duly acknowledged to me that __she__ signed and executed the same as __her__ free and voluntary act and deed, for the uses and purposes therein mentioned.

    GIVEN under my hand and official seal, the day and year in this certificate first above written.

(SEAL)

                                       _Bonnie Thompson_____
                                       Notary Public

My commission expires: 4-30-2011.

RVSD 06-18-08
L:\MTG_DOT\SERIES 400\RLOC\WA_RLOC_MTG.DOC
J:\LOANS\413058 & 413059 - EASTERDAY\413058 DRAFTED DOCS\WA_RLOC_MTG.DOC

19

Initials

**Exhibit "A"**

Assessor's property tax parcel or account number: ▮▮1-017 and ▮▮0-040

Legal Description

The land referred to in this commitment is described as follows:

PARCEL A:

All of Blocks 13 and 14, Northern Pacific Addition to the City of Pasco, according to the plat thereof recorded in Volume "B" of Plats, page 60, records of Franklin County, Washington;
TOGETHER WITH the south half of vacated Court Street adjoining said premises, vacated by City of Pasco Ordinance No. 3685, recorded August 19, 2004 under Recording No. 1649527, which attached by operation of law

PARCEL B:

That portion of the Southwest quarter of Section 8, Township 9 North, Range 30 East, W.M., Franklin County, Washington, described more particularly as follows:

Commencing at the Southwest corner of said Section 8, said corner being South 04°14'13" West 5471.86 feet from the Northwest corner of said section;
thence South 89°23'28" East along the South line of said section 782.49 feet to the True Point of Beginning:

thence North 01°05'08" East 508.87 feet to the beginning of a curve to the left, the radius point of which bears North 88°54'54" West 740.00 feet;
thence Northwesterly along said curve 159.33 feet through a central angle of 12°20'12" to a point that is 40.00 perpendicular to the centerline of the railroad siding;
thence continuing along said curve 41.78 feet, through a central angle of 03°14'00" to the centerline of the railroad siding;
thence North 60°28'07" East 2.11 feet to the Southwest corner of the parcel shown on that record survey filed in Volume 2 of Surveys at page 347;
thence North 60°28'07" East along the South line of said parcel 270.03 feet to the beginning of a curve to the left; the radius point of which bears North 29°31'53" West 716.20 feet;
thence Northeasterly along said curve and said Southerly line 832.73 feet through a central angle of 66°37'44" to the terminus of said curve;
thence North 71°13'27" East along said Southerly line 46.72 feet to the Southeast corner of said parcel and a point on the Westerly right-of-way line of Highway 395;
thence South 13°17'39" East along said Westerly right-of-way line 68.69 feet;
thence South 04°20'11' West 1500.00 feet to a point on the South line of said Section 8;
thence North 89°23'28" West 528.73 feet to the True Point of Beginning;

TOGETHER WITH that portion of the Northeast quarter of the Southwest quarter of said Section 8, lying Westerly of SR 395.

20

Initials _____

**Exhibit "B"**

Personal Property

No specific additional collateral

21                                    Initials _____

*Storage ILBS*

## FACILITY SHEET

### (REAL ESTATE TERM LOAN 3)

This Facility Sheet (as may be amended, modified or supplemented from time to time, referred to herein as this "Facility Sheet") is dated as of August 9, 2018 and is with regard to Facility Loan No. 22115475 between EASTERDAY FARMS PRODUCE, CO., a Washington corporation ("Easterday Farms Produce"), 3E PROPERTIES, a Washington general partnership ("3E Properties"), GALE ALLEN EASTERDAY ("Gale Easterday") and KAREN LOUISE EASTERDAY ("Karen Easterday"), married spouses, CODY ALLEN EASTERDAY ("Cody Easterday") and DEBBY EASTERDAY ("Debby Easterday"), married spouses, and JODY DEE EASTERDAY ("Jody Easterday") and ANDREW H WILLS ("Andrew Wills"), married spouses (Easterday Farms Produce, 3E Properties, Gale Easterday, Karen Easterday, Cody Easterday, Debby Easterday, Jody Easterday, and Andrew Wills are herein individually and collectively, "Borrower") and RABO AGRIFINANCE LLC, a Delaware limited liability company ("Lender") and hereby supersedes any and all previous facility sheets that governed this obligation

Parties and Lender have entered into a Master Credit Agreement ("MCA") dated August 9, 2018 which may include schedules, addendums, and exhibits thereto  The MCA incorporates by reference and includes a Schedule of Definitions and Covenants ("Schedule of Definitions and Covenants") dated of even date with the MCA and any Applicable Obligor Covenant Schedule  Borrower agrees that Borrower has received and reviewed the Schedule of Definitions and Covenants and any Applicable Obligor Covenant Schedule  All terms, covenants, conditions and restrictions set forth in the MCA are incorporated herein by reference as if fully set forth herein  Capitalized terms contained in this Facility Sheet are used as defined in the Schedule of Definitions and Covenants and any Applicable Obligor Covenant Schedule  Some or all of the capitalized terms defined in the Schedule of Definitions and Covenants are used in this Facility Sheet as so defined and the terms of such Schedule of Definitions and Covenants are incorporated by reference into this Facility Sheet for purposes of so defining the capitalized terms that are used in this Facility Sheet in accordance with the Schedule of Definitions and Covenants  To the extent any term is defined in the Schedule of Definitions and Covenants but is not used in this Facility Sheet or any amendment, modification or supplement to this Facility Sheet, such term shall be deemed to be disregarded, of no meaning and without any effect  Except as otherwise defined in this Facility Sheet, the MCA or in the Schedule of Definitions and Covenants, or unless the context otherwise requires, each term that is used in this Facility Sheet which is defined in Article 9 of the UCC shall have the meaning ascribed to that term in Article 9 of the UCC

Borrower requests that Lender make a Loan pursuant to this Facility Sheet  Lender agrees to make such Loan, subject to the terms and conditions of this Facility Sheet, the MCA and the Schedule of Definitions and Covenants

### ARTICLE 1 - PRINCIPAL LOAN TERMS

This Facility Sheet is made and entered on the following Loan terms

1 01     **Loan Type**  The Loan Type being made pursuant to this Facility Sheet is as follows  Real Estate Term Loan 3

1 02     **Loan Amount**  Lender shall lend Borrower the principal sum of $850,000 00

1 03     **Purpose**  The Real Estate Term Loan 3 must be used only for to fund a related party note from 3E Properties to Jody Easterday and Andrew Wills

1 04     **Interest Rate**  The unpaid principal balance of the Real Estate Term Loan 3 will bear interest at the rate of 4 820% per annum, fixed for the term of the facility

1 05     **Required Payments, Maturity Date**

(a)     Borrower shall make equal combined payments of principal and accrued interest on the Real Estate Term Loan 3 in an amount calculated to fully amortize the original principal amount of the Real Estate Term Loan 3 over a term of 84 Real Estate Term Loan 3 Loan Months on January 1, 2019 and the first day of each January, April, July and October during this period from that date to the Real Estate Term Loan 3 Maturity Date

(b)     The unpaid principal balance of, all unpaid accrued interest on, and other charges under this Facility Sheet with respect to the Real Estate Term Loan 3, shall be paid on October 1, 2025 (the "Real Estate Term Loan 3 Maturity Date")

1.06     **Prepayments.**  Prepayments of the Real Estate Term Loan 3 are subject to the following

(a)     The Real Estate Term Loan 3 may be Prepaid at any time if accompanied by payment of the Prepayment Fee

(b)     Notwithstanding the provisions of this section to the contrary, during each year, Borrower may prepay up to 20% of the original principal amount of the Real Estate Term Loan 3 without Prepayment Fee or penalty  Prepayments of the Loan which during any year exceed, in the aggregate 20% of the original principal amount of the Real Estate Term Loan 3 ("Real Estate Term Loan 3 Excess Payments") must be accompanied by payment of the Real Estate Term Loan 3 Prepayment Fee

(c)     For purposes of Prepayments of the Real Estate Term Loan 3, the "Real Estate Term Loan 3 Prepayment Fee" shall mean the Yield Maintenance Fee, calculated using a Reinvestment Spread equal to 1 5%, and 1% as the Yield Maintenance Minimum

(d)     Notwithstanding the provisions of this section to the contrary, during the 30 day period immediately prior to the Real Estate Term Loan 3 Maturity Date, Borrower may prepay the entire unpaid balance of the Real Estate Term Loan 3 in full, without Prepayment Fee or penalty

1.07     **Definition of "Loan Month "**  The term "Real Estate Term Loan 3 Loan Month" means the one month period beginning on the first day of the calendar month immediately following the Closing Date, and each successive one month period

1.08     **The Real Estate Term Loan 3 Note**  The Real Estate Term Loan 3 has been or will be evidenced by this Facility Sheet and a promissory note in a form provided by Lender (the "Real Estate Term Loan 3 Note")

### ARTICLE 2 - COVENANTS REGARDING THE LOAN TYPE MADE UNDER THIS FACILITY SHEET

2 01     **Prepayments Generally.**  Prepayments must be accompanied by all unpaid accrued interest on the Prepayment and all other amounts due under this Facility Sheet  Each Prepayment of a portion of the Loan will be applied to the most remote payment of the principal due under

this Facility Sheet  If Lender receives any Prepayment which it is permitted to refuse, Lender may accept the Prepayment, except that Lender may, as a condition of acceptance, require the payment of interest which would accrue on the amount Prepaid through the date when Lender would be obligated to accept the Prepayment, or the date the principal amount Prepaid would be due under this Facility Sheet, whichever is earlier

EXCEPT AS OTHERWISE SET FORTH HEREIN, BORROWER EXPRESSLY WAIVES THE RIGHT TO PREPAY THE LOAN IN WHOLE OR IN PART WITHOUT PREPAYMENT FEE AND EXPRESSLY AGREES TO PAY THE PREPAYMENT FEE IN ACCORDANCE WITH THIS FACILITY SHEET UPON ANY ACCELERATION OF THE REAL ESTATE TERM LOAN 3 MATURITY DATE OF THE LOAN, INCLUDING, WITHOUT LIMITATION, ANY SUCH ACCELERATION UPON A PROHIBITED TRANSFER OR ACCELERATION UPON DEFAULT

2.02    Default Rate.  Upon the occurrence of an Event of Default, and, to the extent permitted by Applicable Law, all other Loan Obligations shall, from the date of the Event of Default until the date Lender notifies Borrower that it is waived or cured or all Loan Obligations are paid in full, bear interest at the Real Estate Term Loan 3 Default Rate  Subject to the provisions of the Schedule of Definitions and Covenants and this Facility Sheet, the "Real Estate Term Loan 3 Default Rate" means the rate applicable to the unpaid principal balance of the Real Estate Term Loan 3 plus 10 000% per annum  Interest payable at the Real Estate Term Loan 3 Default Rate shall be paid from time to time on demand, or if not sooner demanded, on the first day of each month  The provisions of this section may result in compounding of interest  The provisions of this section will neither constitute a waiver of any Event of Default nor require the declaration of an Event of Default

2.03    Collateral Documents.  The payment and performance of the Obligations are secured by the following

(a)    all Liens in favor of Lender created under and secured by the Loan Documents

### ARTICLE 3 - CONDITIONS

3 01    Conditions of the Loan.  Lender's obligation to make the Loan(s) is subject to the following conditions precedent

(a)    No Event of Default or event which, with the passage of time or the giving of notice would constitute an Event of Default has occurred and remains uncured,

(b)    Lender's receipt of a closing fee in the amount of $6,500 00, and

(c)    reimbursement of Lender's out of pocket expenses, including Legal Fees and any fees and costs payable by Lender as set forth in the MCA or any amendment, modification or supplement thereto, incurred in connection with the underwriting of the Loans or the Closing

### ARTICLE 4 – REPRESENTATIONS AND WARRANTIES

Until such time as all Obligations have been paid in full and Lender has no obligation to make any additional advance under the Loan, Borrower (or the Person or Persons being one or more of the Borrowers as may be specifically named in any of the following representations and covenants) agrees to and makes the following representations and covenants

4 01    Master Credit Agreement Representations  Borrower re-makes and confirms all of Borrower Representations set forth in the MCA

4.02    Entire Agreement  This Facility Sheet and the other Loan Documents, collectively  (i) represent the sum of the understandings and agreements between Lender and Borrower concerning this credit, (ii) replace any prior oral or written agreements between Lender and Borrower concerning this credit, and (iii) are intended by Lender and Borrower as the final, complete and exclusive statement of the terms agreed to by them

4 03    Covenants  Borrower hereby makes and agrees to be bound by all of the Covenants as set forth on Schedule 1 attached hereto and made a part hereof

4.04    Reporting Requirements.  Borrower hereby makes and agrees to be bound by all of the Reporting Requirements as set forth on Schedule 2 attached hereto and made a part hereof

4 05    WAIVER OF PRIOR CLAIMS  BORROWER WAIVES AND RELEASES ANY AND ALL CLAIMS AGAINST LENDER, ITS PARENT, SUBSIDIARIES, AFFILIATES AND ITS MERGED PREDECESSOR, AG SERVICES OF AMERICA, INC , THE SUBSIDIARY OF SUCH PREDECESSOR, AG ACCEPTANCE CORPORATION, AND THE RESPECTIVE SUCCESSORS, ASSIGNS, PARTICIPANTS, AGENTS AND EMPLOYEES OF EACH AND ALL OF THE FOREGOING, RELATING TO OR PERTAINING TO OR AS A RESULT OF THE EXISTING LOANS, AND ANY OTHER ACT OR OMISSION WHICH HAS OCCURRED PRIOR TO THE EXECUTION OF THIS FACILITY SHEET, INCLUDING ALL CLAIMS OF USURY, FRAUD, DECEIT, MISREPRESENTATION, UNCONSCIONABILITY, DURESS, OR LENDER LIABILITY, ANY OTHER CLAIM IN TORT OR IN CONTRACT, OR FOR VIOLATION OF ANY LAW, RULE OR REGULATION

4.06    Expenses  The Borrower shall pay within ten (10) Business Days after demand from Lender, all costs and expenses incurred (or reimburse Lender for payment of) in connection with the preparation, execution, delivery, filing, and administration of this Facility Sheet (including, without limitation, Legal Fees incurred in connection with the preparation of this Facility Sheet and advising the Lender as to its rights, and the cost of any credit verification reports or field examinations of the Borrower's properties or books and records)

4 07    State Specific Addendum  The following state specific language is hereby added to this Facility Sheet as set forth on Schedule 3 attached hereto and made a part hereof

4.08    Counterpart Execution  This Facility Sheet may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document  A signed copy of this Facility Sheet transmitted by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed copy of this Facility Sheet for all purposes, provided, however that Borrower shall promptly deliver an original signed copy of this Facility Sheet to Lender

BORROWER AND GRANTOR UNDER THE MASTER SECURITY AGREEMENT:

EASTERDAY FARMS PRODUCE, CO., a Washington corporation

By: _____
JODY DEE EASTERDAY
President

3E PROPERTIES, a Washington general partnership

By: _____
JODY DEE EASTERDAY
Partner

By: _____
CODY ALLEN EASTERDAY
Partner

By: _____
DEBBY EASTERDAY
Partner

By: _____
GALE ALLEN EASTERDAY
Partner

By: _____
KAREN LOUISE EASTERDAY
Partner

_____
GALE ALLEN EASTERDAY

_____
KAREN LOUISE EASTERDAY

_____
CODY ALLEN EASTERDAY

_____
DEBBY EASTERDAY

_____
JODY DEE EASTERDAY

Address for Notices:
1427 N 1st Ave
Pasco, WA 99301

Alternate address for notice by U.S. Mail:
PO Box 2813
Pasco, WA 99302

Address for Notices:
1427 N 1st Ave
Pasco, WA 99301

Alternate address for notice by U.S. Mail:
PO Box 2813
Pasco, WA 99302

Address for Notices:
631 Bellflower Road
Mesa, WA 99343

Address for Notices:
631 Bellflower Road
Mesa, WA 99343

Address for Notices:
830 Bellflower Road
Mesa, WA 99343

Address for Notices:
830 Bellflower Road
Mesa, WA 99343

Address for Notices:
7916 W. Dradie St.
Pasco, WA 99301

Address for Notices:

3E Properties/EFP MCA 2018
Real Estate Term Loan 3 Facility Sheet

3

7915 W. Dradle St.
Pasco, WA 99301


_____
**ANDREW H WILLS**

**LENDER:**

**RABO AGRIFINANCE LLC**

Address for Notices:

14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attention:  Loan Closing Department

By: _____

Name: ERWIN SANDER

Title: VICE PRESIDENT


3E Properties/EFP MCA 2018
Real Estate Term Loan 3 Facility Sheet

4

## SCHEDULE 1

### Covenants

Until such time as all Obligations have been paid in full

**1.01**    **Insurance**

(a)    If any Real Estate is located in an area now or hereafter designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Borrower agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Real Estate is located in a special flood hazard area, for the lesser of 1) the full unpaid principal balance of the Loan, plus Swap Counterparties' derivative exposure under the Hedging Agreements as calculated by Swap Counterparties, plus any prior Liens on the property securing the Loan, 2) the total replacement value of any structure located in the flood hazard area, or 3) the Real Estate Term Loan 3 Maximum Amount available under the National Flood Insurance Program for the particular type of property, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the Loan

## SCHEDULE 2

### Reporting Requirements

2 01    Reporting Requirements.  Borrower shall furnish to Lender

(a)    promptly upon receipt, copies of all Notices, orders, or other communications regarding (i) any enforcement action by any Governmental Authority relating to health, safety, the environment, or any Hazardous Substances with regard to Borrower's property, activities, or operations, or (ii) any claim against Borrower regarding Hazardous Substances,

(b)    promptly upon Lender's request, all other books, records, statements, lists of property and accounts, budgets, forecasts, reports, records or other information pertaining to the condition or operations of Borrower requested by Lender

Exhibit B
Page 6 of 7

## SCHEDULE 3

### STATE SPECIFIC ADDENDUM

**1.01    Commercial Loan.**  Borrower acknowledges that the proceeds of the Loan are primarily for agricultural, commercial, investment or business purposes, and are not for a consumer transaction (which is defined as a transaction primarily for personal, family or household purposes)

**1.02    NOTICE IS HEREBY GIVEN TO BORROWER THAT ORAL AGREEMENTS OR ORAL COMMITMENTS TO LEND MONEY, EXTEND CREDIT, MODIFY LOAN TERMS OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW**

3E Properties/EFP MCA 2018
Real Estate Term Loan 3 Facility Sheet

7

AFN # 1883943 MULTI Recorded 09/04/2018 12:38 PM Page: 1 of 19 Filing Instrument $315.00 Matt Beaton, Auditor, Franklin County, WA. SIMPLIFILE

Return recorded document to
RABO AGRIFINANCE LLC
14767 N Outer 40 Rd , Suite 400
Chesterfield, MO 63017
Attn Closing Department

CHICAGO TITLE INSURANCE
62241801629

3E Properties/EFP MCA 2018

Real Estate Term Loan 3 █████

Please print or type information WASHINGTON STATE RECORDER'S Cover Sheet   (RCW 65 04)

Document Title· MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Reference Number(s) of Documents assigned or released   N/A

Grantor(s) (Last name, first name, initials)

    3E Properties

Grantee  RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent

Legal description (abbreviated· i e  lot, block, plat or section, township, range)

    Lots 1 and 2 Short Plat 98-09

    Additional legal is on page _____ of document

Assessor's Property Tax Parcel/Account Number,          □ Assessor Tax # not yet assigned

    ████████          ████████

The Auditor/Recorder will rely on the information provided on the form  The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36 18 010  I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document

                                                    Signature of Requesting Party

Exhibit C
Page 1 of 20

Return recorded document to:
RABO AGRIFINANCE LLC
14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attn: Closing Department

CHICAGO TITLE INSURANCE
62241801629

3E Properties/EFP MCA 2018

Real Estate Term Loan 3: [redacted]

Please print or type information WASHINGTON STATE RECORDER'S Cover Sheet   (RCW 65.04)

Document Title: MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Reference Number(s) of Documents assigned or released:   N/A

Grantor(s)  (Last name, first name, initials)

　　　　3E Properties

Grantee: RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent

Legal description (abbreviated: i.e. lot, block, plat or section, township, range)

　　　　Lots 1 and 2 Short Plat 98-09

　　　　Additional legal is on page _____ of document.

Assessor's Property Tax Parcel/Account Number:　　　　☐ Assessor Tax # not yet assigned

　　　　[redacted]

The Auditor/Recorder will rely on the information provided on the form.  The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010.  I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

_____
Signature of Requesting Party

Exhibit C
Page 2 of 20

3E Properties/EFP MCA 2018

Real Estate Term Loan 3 

### MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

(Franklin County, Washington)

NOTICE TO RECORDER  THIS DOCUMENT ALSO CONSTITUTES A FIXTURE FILING THAT SHALL HAVE AN EFFECTIVE PERIOD UNTIL THIS TRUST DEED IS RECONVEYED OR SATISFIED OF RECORD OR ITS EFFECTIVENESS OTHERWISE TERMINATES AS TO THE LAND

This mortgage ("Mortgage") is dated as of August 9, 2018  It is by 3E PROPERTIES, a Washington general partnership ("Grantor"), to and in favor of RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent for itself and the other Secured Parties (defined herein) under the Collateral Agency Agreement (defined herein, and Rabo AgriFinance LLC, in that capacity, "Mortgagee")

RABO AGRIFINANCE LLC, a Delaware limited liability company, as Lender ("Lender") has agreed to make up to $850,000 00 in loans to Borrower (as defined in the Facility Sheet(s)) under the terms and conditions of the Master Credit Agreement between Grantor and Lender dated August 9, 2018, as may be amended, modified, replaced, or supplemented from time to time (the "MCA")  Each capitalized term used in this Mortgage that is defined in the MCA and not defined in this Mortgage will have the meaning specified in the MCA  This Mortgage will be interpreted in accordance with the Drafting Conventions

Grantor have or may also enter into certain derivatives transactions under Hedging Agreements with Swap Counterparties, under which Grantor has or may incur Hedging Obligations to Swap Counterparties

The Loan Obligations (defined in the MCA) may be, from time to time, guaranteed by Guarantor under the terms and conditions of one or more guaranties in favor of Collateral Agent  The Hedging Obligations are guaranteed by Guarantor under the terms and conditions of the Hedging Agreements and/or a separate guaranty of the Hedging Obligations (the MCA, the Guaranty, and the Hedging Agreements and any separate guaranty of the Hedging Obligations are herein sometimes individually and collectively referred to as the "Debt Instrument")

Non-Obligor(s) have an economic interest in Borrower or will obtain some other material financial benefit as a result of Secured Parties' entering into the Secured Obligation Documents (defined herein)  Secured Parties require that Non-Obligor execute this agreement as a condition of the Secured Obligation Documents

TO SECURE repayment of the indebtedness evidenced by the Note (defined herein) and payment and performance of all other Secured Obligations (defined herein), Grantor irrevocably and unconditionally grants, bargains, sells, and conveys to Mortgagee, WITH POWER OF SALE wherever located, whether now owned or hereafter acquired or arising, and, except as indicated, whether constituting real estate or personal property (collectively, the "Property")  (a) the real estate and any interest in the real estate located in Franklin County, Washington, and described in EXHIBIT A (the "Land"), (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "Improvements"), (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto, (d) the ground water on, under, pumped from or otherwise available to the Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise, the right to remove or extract any such ground water including any permits, rights or licenses granted by any Governmental Authority and any rights granted or created by any easement, covenant, agreement or contract with any Person, and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization, any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries

Exhibit C
Page 3 of 20

of any private water company, mutual water company, or other non-governmental entity (collectively, "Water Rights"), (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "Mineral Rights"), (g) timber now or hereafter standing or cut, (h) Leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the "Leases") including the Leases described in EXHIBIT B, (i) all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to the operation and maintenance of the Property, (j) all bushes, groves, trees, plants, vines or other plantings, upon or under the Land ("Plantings"), (k) working drawings, instructional manuals, and rights in processes directly related to the operation of the Property, (l) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment (except motor vehicles, trailers, and Planting, tillage and harvesting equipment rolling stock) or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements or (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements or, (iii) described on EXHIBIT B, (m) all permits and licenses relating or pertaining to the use or enjoyment of the Property, (n) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, Judgments, or settlements made in lieu thereof, for damage to the Property (the "Insurance Claims"), (o) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Estate (the "Condemnation Awards"), (p) money or other personal property of Grantor in addition to the foregoing deposited with or otherwise in Mortgagee's or Secured Parties' possession, (q) rights and interests under the Hedging Agreements, including all rights to the payment of money from Secured Parties under the Hedging Agreements, and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in any of the Hedging Agreements, (r) the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Mortgagee or Secured Parties in the Property, and (s) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data

1.    Secured Obligations.  Grantor makes the grant, conveyance, transfer and assignment above, makes the irrevocable and absolute assignment in Section 4, and grants the security interest under Section 5, to secure payment and performance of the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose  (a) all Obligations (defined in the MCA), under one or more Facility Sheets(s) from time to time where Grantor is designated from time to time as Borrower, Guarantor or Non-Borrower, including (i) the Real Estate Term Loan 3 Note made as of the date of this Mortgage, from Grantor to Lender in the original principal amount of $850,000 00 (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"),  (ii) all Hedging Obligations; and (iii) all other indebtedness, liabilities and obligations of Grantor to Lender and the Swap Counterparties arising pursuant to any of the Transaction Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, (b) all obligations of Grantor under this Mortgage; (c) all obligations of Grantor to Lender, Cooperatieve Rabobank U A , (trading as Rabobank), a foreign banking organization organized as a cooperative bank under the laws of The Netherlands ("Rabobank"), and/or Rabobank, N A , a national banking association ("RNA"), or any other Affiliate of Lender (Lender, Rabobank and RNA, and any other Affiliate of Lender are herein individually and collectively, "Secured Parties"), whether now existing or hereafter incurred or created, whether voluntary or involuntary, whether obligatory or non-obligatory, whether due or not due, whether absolute or contingent, or whether incurred directly or acquired by assignment or otherwise, under the terms and conditions of any other written instrument or agreement executed by Grantor and which specifically recites that those obligations are secured by this Mortgage, and (d) any of the foregoing that arises after the filing of a petition by or against Grantor under an Insolvency Proceeding.  All Persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the MCA, the other Transaction Documents, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Transaction Documents and those other agreements or instruments, the "Secured Obligation Documents")  These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and reborrowing, or which provide that the

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

2

Exhibit C
Page 4 of 20

rate of interest on one or more of the Secured Obligations may vary from time to time. This Mortgage does not secure any obligation which is unsecured pursuant to the express terms of the MCA or any other document, agreement or instrument. Without limitation of the foregoing, this Mortgage does not secure the indebtedness, liabilities and obligations of Guarantor as guarantor under the terms and conditions of the Guaranty or any other guaranty given by Guarantor to secure the Hedging Obligations.

2.    Future Secured Obligations. The Secured Obligations include future advances made by Mortgagee or Secured Parties, at their option, and for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this Mortgage, and have priority as to third Persons with or without actual notice from the time this Mortgage is filed for record as provided by law. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time. The unpaid balance of any Revolving Line of Credit or Hedging Obligations secured by this Mortgage may at certain times be zero. This Mortgage will remain in full force and effect notwithstanding any zero balance. Grantor shall not file for record any notice limiting the maximum amount secured by this Mortgage (a "Maximum Amount Notice"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing in this Section 2 will constitute a commitment to make additional or future advances which are not specified by the terms of the MCA or enter into future derivatives transactions in any amount.

3.    Note Maturity Date. The latest date on which any Note matures is October 1, 2025.

4.    Assignment. Grantor irrevocably and unconditionally assigns to Mortgagee and grants Mortgagee a security interest in, the Leases, all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other benefits derived from or produced by the Real Estate, including but not limited to, any monies, proceeds, damages, Judgments or payments in lieu thereof, received by or due to Grantor occasioned by any mineral or geothermal exploration, wind energy or drilling activity on or under the Real Estate, all prepaid rents, security deposits and other supporting obligations (the "Rents"). Mortgagee may collect Rents with or without taking possession of the Property. Mortgagee confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Mortgagee may terminate the License without notice to or demand upon Grantor. Mortgagee, by its acceptance of this Mortgage does not assume any duty or obligation under the Leases. The acceptance by Mortgagee of the assignment of Leases and Rents and profits with all the rights, powers, privileges and authority so granted will not obligate Mortgagee to assume any obligations in respect of the Leases and Rents and profits or under the Leases, or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Leases and Rents and profits or under the Leases or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Grantor.

5.    Grant of Security Interest. This Mortgage is a security agreement under the Uniform Commercial Code in effect in the State of Washington (the "UCC"), and Grantor grants Mortgagee a security interest in and pledges and assigns to Mortgagee all of Grantor's right, title and interest in the Property, to the extent characterized as personal property (the "Personalty"). The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Mortgagee specified in Section 24 is the address for Mortgagee as secured party under the UCC. As used in this Mortgage, the term "lien" is synonymous with the term "lien and security interest."

6.    Warranty of Title. Grantor represents and warrants that Grantor lawfully possesses and holds fee simple title to all of the Land and the Improvements, that Grantor has the right, power and authority to mortgage, grant, convey and assign the Property, and that the Property is unencumbered. Grantor covenants that Grantor will warrant and defend generally the title to, and ownership and possession of, the Property against all claims and demands. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

7.    Additional Representations. Grantor represents to Mortgagee and Secured Parties that: (a) the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law, (b) the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof, (c) none of the Land or Improvements is subject to any Lien, offset or claim, (d) Grantor owns the Personalty free and clear of any security interests, reservations of title or conditional sales contracts, and there is no presently valid financing statement affecting the Personalty on file in any public office, (e) Grantor has title to, or (in the case of leased property) valid leasehold interests in, all of their properties and assets, real and personal, including the properties

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

3

Exhibit C
Page 5 of 20

and assets and leasehold interests reflected in the Financial Information (other than any properties or assets disposed of in the ordinary course of business), (f) the legal name of Grantor is as appears in the first paragraph of this agreement, (g) Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this agreement, (h) 3E Properties, each has its place of business, or its chief executive office, if it has more than one place of business, is located at the address adjacent to its signature below, (i) if Grantor is anything other than a natural Person, it has complied with all Applicable Laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business; (j) the execution, delivery and performance by Grantor of this Mortgage is within the powers and authority of Grantor and has been duly authorized, (k) to Grantor's knowledge, this Mortgage does not conflict with any Applicable Law, (l) this Mortgage is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable; (m) there has been no Material Adverse Effect as to Grantor since the effective date the Financial Information was provided to Mortgagee or Secured Parties, (n) there is no lawsuit, tax claim or other dispute pending or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect, (o) Grantor is not the subject of any Judgment, (p) this Mortgage does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated, (q) Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties, (r) Grantor has complied with all current and future laws, regulations and ordinances or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("Environmental Laws"), (s) Grantor has not received any notices of violations of any Applicable Laws; and Grantor is in compliance with all Applicable Laws, (t) there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws, (u) Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address specified below, and (v) unless otherwise disclosed to Mortgagee, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986; and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default

8.      **Information Accurate and Complete.**  All financial statements and other reports, documents, instruments, information and forms of evidence which have been delivered to Mortgagee or Secured Parties concerning Grantor, or the Property (the financial and other information supplied or to be supplied to Mortgagee or Secured Parties in connection with this Mortgage is herein referred to as the "Financial Information"), are accurate, correct and sufficiently complete in all material respects to provide Mortgagee and Secured Parties true and accurate knowledge of their subject matter, including, without limitation, all material contingent liabilities  Grantor's submission of any Financial Information or other report, record or information pertaining to the condition or operations, financial or otherwise, of Grantor, from time to time, whether or not required under this Mortgage, will be deemed accompanied by a representation by Grantor that the Financial Information or other report, record or information is complete and accurate in all material respects as to the condition or operations of Grantor (and, if applicable, Grantor's Subsidiaries, Affiliates, partners, shareholders, members, or other principals), including, without limitation, all material contingent liabilities and Grantor's business or organizational structure

9.      **Performance of Secured Obligations**  Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms

10.     **Maintenance and Preservation of Property.**  Grantor shall  (a) immediately discharge any Lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a Lien which now or hereafter encumbers or appears to encumber all or part of the Property, whether the Lien is or would be senior or subordinate to this Mortgage, (b) not alter, remove or demolish any portion of the Improvements, except as permitted or required by the MCA, (c) maintain (or cause to be maintained) all policies of insurance required under the MCA and pay (or cause payment of) all premiums for that insurance on or prior to the date when due, (d) promptly and completely repair and/or restore any portion of the Property which becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound building practices, whether or not Grantor has received the proceeds of any Insurance Claim, (e) not commit or allow any waste of the Property, nor do or suffer to be done any act whereby the value of any part of the Property may be lessened, (f) not initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

4

Exhibit C
Page 6 of 20

as permitted or required by the MCA, (g) if the Land is agricultural, keep the Property in good condition and repair, operate the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices, take all reasonable precautions to control wind and water erosion, fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses, protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Mortgagee, (h) complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Grantor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights; (i) not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Grantor on the Property or any part of it under this Mortgage, and (j) perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility

11.    Compliance with Applicable Law  Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

12    Taxes and Assessments  Grantor shall pay (a) prior to delinquency, all taxes, levies, charges and assessments imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a Lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively "Impositions"), (b) any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this Mortgage or any other Transaction Documents, together with any and all interest and penalties thereon, and (c) taxes, levies, charges and assessments on Mortgagee's or Secured Parties' interest therein or upon this Mortgage or the Secured Obligations (collectively, "Mortgage Taxes"), except that if the amount of Mortgage Taxes exceeds the Maximum Rate, Grantor will not be required to pay any such excess  If after the date of this Mortgage, the State of Washington passes any law deducting from the value of Land for the purpose of taxation any Lien thereon, or changing in any way the laws for the taxation of Mortgages or debts secured by Mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this Mortgage, then within 180 days after notice by Mortgagee to Grantor, Grantor shall pay all Secured Obligations  Notwithstanding the foregoing provisions of this section, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that Mortgagee is satisfied that neither the Property nor any part thereof or interest therein will be at risk of being sold, forfeited, or lost as a result of such contest, and Grantor has posted a bond equal to 115% of the contested amount or furnished such other security required from time to time by Mortgagee for purposes of payment of the contested amount.

13.    Damages and Insurance and Condemnation Proceeds  Mortgagee may, at its option, (a) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding, (b) participate in any action or proceeding relating to any Condemnation Award, and (c) join Grantor in adjusting any Insurance Claim  All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Mortgagee  In each instance, Mortgagee may apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds or Condemnation Award, including Legal Fees  The balance shall, at Mortgagee's option, be applied to pay or Prepay (with any applicable Prepayment Consideration, if any) some or all of the Secured Obligations in such order and proportions as it may choose  GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER WHICH PROVIDE FOR ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT

14.    Site Visits, Observation and Testing.  Mortgagee and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing Appraisals, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the MCA, and otherwise to determine Grantor's compliance with this Mortgage

Exhibit C
Page 7 of 20

15.    Defense and Notice of Claims and Actions. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims. Grantor must give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

16.    Prohibited Transfers. Grantor agrees that a material factor in Secured Parties' decision to enter into the Secured Obligation Documents is the expertise, financial status and other characteristics of Grantor or Borrower. Grantor or Borrower shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Mortgagee may declare all Secured Obligations to be due and payable immediately. "Prohibited Transfer" means (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Grantor under this instrument, and not expressly permitted under this instrument or the other Secured Obligation Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Grantor or Borrower is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Grantor, (c) if Grantor or Borrower is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under Applicable Law, or any transfer or transfers of the partnership interests, (d) if Grantor or Borrower is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Grantor or Borrower, or (e) if Grantor or Borrower is a trust, withdrawal or removal of any trustee or revocation of the trust.

17.    Compensation and Reimbursement of Costs and Expenses. Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Mortgagee when the law provides no maximum limit, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement, (b) all of Mortgagee's costs and expenses which may be incurred in rendering any such services, and (c) all costs, expenses and other advances which may be incurred or made by Mortgagee in any efforts to enforce any terms of this Mortgage or protect the Property, including any rights or remedies afforded to Mortgagee under Section 20, including but not limited to Appraisals, inspections, insurance premiums, and prevention of waste, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the Adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title. If Mortgagee chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Mortgagee in each of those Foreclosure Sales. GRANTOR SHALL INDEMNIFY MORTGAGEE AND SECURED PARTIES AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS MORTGAGE OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW, (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS, OR (C) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY MORTGAGEE OR SECURED PARTIES TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY MORTGAGEE AND SECURED PARTIES SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS MORTGAGE.

18.    Payments Due under this Mortgage. Grantor must pay all obligations to pay money arising under this Mortgage immediately upon demand by Mortgagee or Secured Parties. Each such obligation shall bear interest from the date the obligation arises at the Default Rate.

19.    Events of Default. The following each shall be an event of default under this Mortgage (an "Event of Default") (a) an Event of Default under the MCA, including a default termination event or other similar event under any Hedging Agreement which is not cured within any grace or cure period specified therein, if any, (b) a Prohibited Transfer, (c) the Financial Information or any representation in this Mortgage is materially incorrect or materially misleading, (d) the filing of any notice

3E Properties/EFP MCA 2016
Mortgage, Assignment of Rents and Security Agreement

6

Exhibit C
Page 8 of 20

limiting the maximum amount secured by this Mortgage to a sum less than the Maximum Amount Secured as specified herein, or if no such amount is specified, to any amount; (e) for more than ten days after notice from Mortgagee, Grantor is in default under any term, covenant or condition of this Mortgage not previously described in this Section 19, which can be cured by the payment of a sum of money, or (f) for 30 days after notice from Mortgagee or Secured Parties, Grantor is in default under any term, covenant or condition of this Mortgage not previously described in this Section 19, provided that if (i) it is reasonably certain that the default cannot be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

20.     **Remedies**.  At any time after an Event of Default, Secured Parties or Mortgagee may (a) declare any or all of the Secured Obligations to be due and payable immediately, (b) cure any breach or default of Grantor; (c) may, to the extent permitted by Applicable Law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any Guarantor, or of any Person liable for the payment of the Secured Obligations, (d) in person, by agent or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property, (e) exercise any or all of the remedies granted to a secured party under the UCC, (f) bring an action in any court of competent jurisdiction to foreclose this Mortgage or to obtain specific enforcement of any of the Covenants or agreements of this Mortgage; (g) under the power of sale granted under this Mortgage (the "Power of Sale"), at its option cause some or all of the Property, including the Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law; and (h) do any and all other things in connection with those actions that Mortgagee may consider necessary and appropriate to protect the security of this Mortgage.  GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS MORTGAGEE AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS MORTGAGEE CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS.  GRANTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION, AND AGREES NOT TO OPPOSE SUCH APPOINTMENT.  Notwithstanding the foregoing, in no event will Mortgagee or Secured Parties have any obligation to take any of the actions set forth in this Section 20.  Mortgagee shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Mortgage, unless Mortgage has given express written notice of its election of that remedy.  The proceeds of any receivership shall be applied by the receiver toward the payment of the Secured Obligations or toward the payment of such part of any Judgment thereupon which remains unsatisfied after the sale of the Property.  The receiver may make repairs and keep the Property in good condition and repair pending a sale, and pay all taxes and assessments accrued or accruing or redeem from sales therefore, pay all premiums of insurance required under this Mortgage, and pay all other charges as herein provided.

21.     **Sales of Property**.  Mortgagee may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage.  Mortgagee may dispose of any Personalty separately from the sale of real property, in any manner permitted by the UCC or any other Applicable Law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation.  Mortgagee may choose to dispose of some or all of the Property which consists solely of real property in any manner then permitted by Applicable Law.  To the extent permitted by Applicable Law, Mortgagee may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the UCC.  Grantor agrees that such a sale of Personalty together with real property constitutes a commercially reasonable sale of the personal property.  For purposes of the Power of Sale, either a sale of real property alone under the Power of Sale, or, to the extent permitted by Applicable Law, a sale of both real and personal property under the Power of Sale, together in accordance with the UCC, will sometimes be referred to as a "Non-Judicial Foreclosure Sale."  Before any Non-Judicial Foreclosure Sale, Mortgagee must give such notice of default and election to sell as may then be required by law.  When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee, as required by Applicable Law, must sell the Property being sold at a public auction to be held at the time and place specified in the notice of sale.  Mortgagee has no obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale.  From time to time in accordance with then Applicable Law, Mortgagee may

Exhibit C
Page 9 of 20

postpone any Non-Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale. Trustee or Mortgagee, as required by Applicable Law, shall execute and deliver to any purchaser(s) a deed(s) or bill(s) of sale conveying the Property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed(s) or bill(s) of sale of any matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, will be conclusive proof of their truthfulness. Any such deed(s) or bill(s) of sale shall be conclusive against all Persons as to the facts recited in it. If the Land is located in more than one county, then to the extent permitted by Applicable Law, a judicial or non-judicial foreclosure sale of the Property may be maintained in any one or more of those counties. If the Property consists of more than one lot, parcel or item of property, Mortgagee may. (i) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (ii) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made under the Power of Sale, or in connection with judicial proceedings, or by virtue of a Judgment and decree of foreclosure and sale, or through two or more such sales or dispositions, or in any other manner (including a Non-Judicial Foreclosure Sale) Mortgagee may deem to be in its best interests (any such sale or disposition, a "Foreclosure Sale," any two or more, "Foreclosure Sales") If it chooses to have more than one Foreclosure Sale, Mortgagee at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale will terminate or affect the Lien of this Mortgage on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full. At any Foreclosure Sale, any person, including Grantor, Mortgagee or Secured Parties, may bid for and acquire the Property or any part of it to the extent permitted by then Applicable Law. Instead of paying cash for that property, Mortgagee or Secured Parties may settle for the purchase price by crediting the sales price of the Property against the Secured Obligations, unless Applicable Law mandates a specific order of application, in which event payments and collections will be applied as mandated by Applicable Law. Any such credit, and all other proceeds of any Foreclosure Sale shall be applied to the Secured Obligations in any order Mortgagee may choose.

22.    Additional Rights.   In addition to the rights and powers given to Mortgagee under this Mortgage, Mortgagee shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this Mortgage.

23.    Guarantor and/or Non-Obligor Provisions.   (a) Guarantor and/or Non-Obligor authorize Mortgagee and Secured Parties to perform any of the following acts at any time, all without notice to Guarantor and/or Non-Obligor and without affecting the rights of Mortgagee or Secured Parties or the obligations of Guarantor and/or Non-Obligor under this Mortgage. (i) alter any terms of the MCA or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the MCA or any part of it, (ii) take and hold security for the MCA, accept additional or substituted security for the MCA, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security, (iii) apply any security now or later held for the MCA in any order that Mortgagee and Secured Parties may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale, (iv) release Obligor/Borrower of its liability for the MCA or any part of it, (v) substitute, add or release any one or more guarantors or endorsers of the MCA, and (vi) extend other credit to Obligor/Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the MCA.

(b)    Guarantor and/or Non-Obligor waive. (i) any right to require Mortgagee or Secured Parties to proceed against Obligor/Borrower, proceed against or exhaust any security held from Obligor/Borrower, or pursue any other remedy in Mortgagee's and Secured Parties power to pursue, (ii) any defense based on any legal disability of Obligor/Borrower, any discharge or limitation of the liability of Obligor/Borrower to Mortgagee or Secured Parties, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that the obligations of Guarantor and/or Non-Obligor exceed or are more burdensome than those of Obligor/Borrower, (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and the existence, creation, or incurring of new or additional indebtedness of Obligor/Borrower, and demands and notices of every kind, (iv) any defense based on or arising out of any defense that Obligor/Borrower may have to the payment or performance of the MCA or any part of it, and (v) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S Code) or any successor statute, all rights to enforce any remedy that Mortgagee or Secured Parties may have against

Exhibit C
Page 10 of 20

Obligor/Borrower, and all rights to participate in any security now or later to be held by Mortgagee or Secured Parties for the MCA

(c)     Guarantor and/or Non-Obligor waive all rights and defenses that Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property hereby encumbered   This means, among other things   (i)  Mortgagee and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Mortgage against Guarantor and/or Non-Obligor) without first foreclosing on any real or personal property collateral securing the MCA, and (ii)  if Mortgagee forecloses on any real property collateral securing the MCA   (A) the amount of the MCA may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Mortgagee and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Mortgage against Guarantor and/or Non-Obligor) even if Mortgagee or Secured Parties, by foreclosing on the real property collateral, has destroyed any right Guarantor and/or Non-Obligor may have to collect from Borrower   This is an unconditional and irrevocable waiver of any rights and defenses Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property

(d)     Guarantor and/or Non-Obligor waive any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency Judgment after a foreclosure of any real property other than the Property hereby encumbered

(e)     Guarantor and/or Non-Obligor are solely responsible for keeping informed of the financial condition and business operations of Borrower and all other circumstances affecting the ability of Borrower to pay and perform Borrower's obligations to Mortgagee and Secured Parties, and agrees that Mortgagee and Secured Parties will have no duty to disclose to Guarantor and/or Non-Obligor any information which Mortgagee or Secured Parties may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Borrower to perform

(f)     No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage or the Guaranty

24.     Notices.  All notices, approvals, consents, and other communications, under this Mortgage ("Notices") must be given in accordance with and will be subject to the terms and provisions of the MCA   Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below, if to Mortgagee or Lender, to 14767 N  Outer 40 Rd , Suite 400, Chesterfield, MO 63017, Attention   Loan Closing Department, if to Secured Parties other than Lender, c/o Rabobank, 245 Park Avenue, New York, NY 10167, Attention   Customer Service Representative, and in the case of any other Person, to the address designated by that Person in a notice to Grantor, Mortgagee, and Lender

25.     Mortgagee.  Without affecting the personal liability of any Person, including Grantor and Obligor/Borrower, for the payment of the Secured Obligations or the Lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee and Secured Parties may from time to time and without notice  (i) release any Person liable for payment of any Secured Obligation, (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation, (iii) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, Mortgages, Security Agreements or any other instruments of security, or (iv) alter, substitute or release any property securing the Secured Obligations

26.     Exculpation of Mortgagee.  None of Mortgagee or Secured Parties will be directly or indirectly liable to Grantor or any other Person as a consequence of any of the following   (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage, (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this Mortgage, or (c) any loss sustained by Grantor or any third party resulting from any failure to lease the Property or from any other act or omission in managing the Property after an Event of Default, unless the loss is caused by the willful misconduct and bad faith of Mortgagee or Secured Parties, respectively GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES DESCRIBED ABOVE, AND AGREES THAT NO SUCH LIABILITY BE ASSERTED AGAINST OR IMPOSED UPON MORTGAGEE OR ANY SECURED PARTY

27.     Waiver of Dower, Homestead, and Distributive Share.  Grantor relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property   Grantor waives any right of exemption as to the Property

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

9

Exhibit C
Page 11 of 20

28.    Waiver of Certain Other Laws.  To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all Persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the Lien created by this Mortgage

29.    Release.  When all Secured Obligations have been paid in full, Lender has no obligation to make additional Loans and the Hedging Agreements have been terminated, Mortgagee shall execute and deliver to Grantor, a release of the Property from the Lien of this Mortgage

30.    Additional Provisions  The Secured Obligation Documents state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this Mortgage  The Secured Obligation Documents also grant further rights to Mortgagee and Secured Parties and contain further agreements and affirmative and negative covenants by Grantor which apply to this Mortgage and to the Property

31.    Collateral Agency Agreement  This Mortgage is subject to the terms of the collateral agency agreement between the Secured Parties (the "Collateral Agency Agreement")

32.    Entire Agreement.  This Mortgage and the other Secured Obligation Documents collectively  (i) represent the sum of the understandings and agreements between Mortgagee, Secured Parties and Grantor concerning this credit; (ii) replace any prior oral or written agreements between Mortgagee, Secured Parties and Grantor concerning this credit, and (iii) are intended by Mortgagee, Secured Parties and Grantor as the final, complete and exclusive statement of the terms agreed to by them  In the event of any conflict between this Mortgage and any other agreements required by this Mortgage, this Mortgage will prevail

33.    Other Acts.  Grantor shall cooperate with Mortgagee for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien provided for in this Mortgage or to carry out the intent of this agreement  Promptly (but in no event more than ten days) after request by Mortgagee, Grantor will execute, acknowledge and deliver any document which Mortgagee deems necessary or advisable for these purposes, and will, on demand, pay any expenses incurred by Mortgagee in the preparation, execution and filing of any such documents

34.    No Waiver or Cure  Each waiver by Mortgagee or Secured Parties must be in writing, and no waiver is to be construed as a continuing waiver  No waiver is to be implied from any delay or failure by Mortgagee or Secured Parties to take action on account of any default of Grantor  Consent by Mortgagee or Secured Parties to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's or Secured Parties' consent to be obtained in any future or other instance  The exercise by Mortgagee or Secured Parties of any right or remedy under this Mortgage or the other Secured Obligation Documents or under Applicable Law, shall not  cure or waive a breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Secured Obligation Documents, including any Hedging Agreements, have been cured), or impair the security of this Mortgage, or prejudice Mortgagee, Secured Parties or any receiver appointed in accordance with this Mortgage, in the exercise of any right or remedy afforded any of them under this Mortgage, or be construed as an affirmation by Mortgagee or Secured Parties of any tenancy, lease or option, or a subordination of the Lien of this Mortgage

35.    Waivers  Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require upon foreclosure sales of assets in a particular order  Grantor waives presentment, demand, protest, notice of protest and notice of dishonor and waives all exemptions as to the Secured Obligations  Each successor and assign of Grantor, including any holder of a Lien subordinate to this Mortgage, by acceptance of its interest or Lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself

36.    Joint and Several Obligations.  If Grantor consists of more than one Person, each Grantor (a) acknowledges and undertakes, together with the other Grantors, joint and several liability for the indebtedness, liabilities and obligations of Grantor under this Mortgage, (b) acknowledges that this Mortgage is the independent and several obligation of

3E Properties/EFP MCA 2016
Mortgage, Assignment of Rents and Security Agreement

10

Exhibit C
Page 12 of 20

each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (c) agrees that its liability hereunder and under any other Secured Obligation Document shall be absolute, unconditional, continuing and irrevocable. GRANTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT MORTGAGEE OR SECURED PARTIES EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER GRANTORS UNDER THIS MORTGAGE, OR ANY OTHER SECURED OBLIGATION DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS

37.     Binding Effect; Successors and Assigns. The Secured Obligation Documents shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns, provided that Grantor shall not assign its rights or obligations hereunder without Secured Parties' consent. However, this Paragraph does not waive the provisions of Section 16, and Grantor shall not assign its rights or obligations hereunder without Mortgagee's and Secured Parties' consent. Mortgagee and Secured Parties may transfer all or any portion of its rights under the Secured Obligation Documents to any other Person. Mortgagee and Secured Parties may disclose to any actual or proposed transferee any information that Grantor has delivered to Mortgagee and Secured Parties in connection with the negotiation of this Mortgage or pursuant to the Secured Obligation Documents; and Grantor shall cooperate fully with Mortgagee and Secured Parties in providing that information to any actual or proposed transferee

38.     Governing Law. This Mortgage shall be governed exclusively by the Applicable Laws of the State of Washington (the "Governing Law State") without regard or reference to its conflict of laws principles. Grantor understands that the laws of the Governing Law State may differ from the laws of the state where Grantor resides or otherwise is located or where the Property is located. However, Grantor understands, agrees and acknowledges that (a) this Mortgage and the Secured Obligation Documents have significant and substantial contacts with the Governing Law State, (b) it is convenient to Grantor and Lender to select the law of the Governing Law State to govern this Mortgage and the transactions evidenced hereby, (c) the transactions evidenced by the MCA and this Mortgage bear a reasonable connection to the laws of the Governing Law State, (d) the choice of the internal laws of the Governing Law State was made for good and valid reasons, and (e) the choice of the Governing Law State constitutes good and valuable consideration for Secured Parties to enter into the Secured Obligation Documents and Secured Parties have entered into the Secured Obligation Documents in reliance on that choice

39.     JURISDICTION AND VENUE. GRANTOR IRREVOCABLY AGREES THAT, AT THE OPTION OF MORTGAGEE, ALL ACTIONS, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO THIS MORTGAGE OR ANY OTHER TRANSACTION DOCUMENT WILL BE LITIGATED IN THE IOWA DISTRICT COURT FOR BLACK HAWK COUNTY, IOWA, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA GRANTOR IRREVOCABLY CONSENTS TO SERVICE, JURISDICTION, AND VENUE OF THOSE COURTS FOR ALL SUCH ACTIONS, PROCEEDINGS AND COUNTERCLAIMS AND WAIVES ANY OTHER VENUE TO WHICH IT MIGHT BE ENTITLED BY VIRTUE OF DOMICILE, HABITUAL RESIDENCE OR OTHERWISE

40.     Miscellaneous. This Mortgage may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument. If Grantor is comprised of multiple Persons, any Person comprising Grantor is hereby authorized to bind all parties comprising Grantor. Mortgagee or Secured Parties may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person. Time is of the essence of this Mortgage. Each Party has participated in negotiating and drafting this Mortgage, so if an ambiguity or a question of intent or interpretation arises, this Mortgage is to be construed as if the parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this Mortgage. Mortgagee is authorized to execute any other documents or take any other actions necessary to effectuate this Mortgage and the consummation of the transactions contemplated herein. This Mortgage may not be amended, changed, modified, altered or terminated without the prior written consent of Mortgagee and Secured Parties. Any provision of any Secured Obligation Document which is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Secured Obligation Document or affecting the validity or enforceability of that provision in any other jurisdiction, except that if such provision relates to the payment of any monetary sum, then Mortgagee or Secured Parties may, at its option, declare all Secured Obligations immediately due and payable. No merger shall occur as a result of Mortgagee's or Secured Parties' acquiring any other estate in or any other Lien on

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

Exhibit C
Page 13 of 20

the Property. All rights and remedies under this Mortgage and the Secured Obligation Documents are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

41.    INDEMNIFICATION. GRANTOR SHALL DEFEND, INDEMNIFY AND HOLD MORTGAGEE AND SECURED PARTIES AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS, AGENTS AND ATTORNEYS (THE "INDEMNIFIED PERSONS") HARMLESS AGAINST ANY AND ALL LOSSES OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS ARISING OUT OF CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF MORTGAGEE OR SECURED PARTIES BEING PARTY TO THIS MORTGAGE OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS MORTGAGE; except that Grantor shall have no obligation to an Indemnified Person under this section with respect to Losses resulting from the gross negligence or willful misconduct of that Indemnified Person as determined by a court of competent jurisdiction. If and to the extent that an Indemnity is unenforceable for any reason, Grantor shall be obligated to make the maximum contribution to the payment and satisfaction thereof which is permissible under Applicable Law. THE PROVISIONS OF ALL INDEMNITIES SHALL SURVIVE THE TERMINATION OF THIS MORTGAGE.

42.    WAIVER OF TRIAL BY JURY. GRANTOR AND, BY ACCEPTANCE HEREOF, MORTGAGEE (A) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (I) THIS MORTGAGE; OR (II) ANY SECURED OBLIGATION DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND, (B) TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY, AND ARE A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE SECURED OBLIGATION DOCUMENTS.

43.    ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

Grantor is signing this Mortgage effective as of the day and year first written above.

GRANTOR

Address for Notices:
1427 N 1st Ave
Pasco, WA 99301

Alternate address for notice by U.S. Mail:
PO Box 2813
Pasco, WA 99302

3E PROPERTIES, a Washington general partnership

By: _____
JODY DEE EASTERDAY
Partner

By: _____
CODY ALLEN EASTERDAY
Partner

By: _____
DEBBY EASTERDAY
Partner

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

12

Exhibit C
Page 14 of 20

By: _____
GALE ALLEN EASTERDAY
Partner

By: _____
KAREN LOUISE EASTERDAY
Partner

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

13

Exhibit C
Page 15 of 20

STATE OF WASHINGTON )
                                              )SS
COUNTY OF _Franklin_ )

On this _30th_ day of _August_, 2018, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared JODY DEE EASTERDAY, to me known to be the Partner of 3E PROPERTIES, a Washington general partnership, the general partnership that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said general partnership, for the uses and purposes therein mentioned, and on oath stated that _Jody Easterday_ authorized to execute the said instrument and that the seal affixed is the [company/corporate] seal of said general partnership.

Given under my hand and seal of office this _30th_ day of _August_, 2018

_[signature]_

Notary Public residing at _Pasco, Washington_
Printed Name: _Lauryn A. Hira_
My Commission Expires: _1/8/2021_

STATE OF WASHINGTON )
                                              )SS
COUNTY OF _Franklin_ )

On this _30th_ day of _August_, 2018, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared CODY ALLEN EASTERDAY, to me known to be the Partner of 3E PROPERTIES, a Washington general partnership, the general partnership that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said general partnership, for the uses and purposes therein mentioned, and on oath stated that _Cody Easterday_ authorized to execute the said instrument and that the seal affixed is the [company/corporate] seal of said general partnership.

Given under my hand and seal of office this _30th_ day of _August_, 2018

_[signature]_

Notary Public residing at _Pasco, Washington_
Printed Name: _Lauryn A. Hira_
My Commission Expires: _1/8/2021_

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

14

Exhibit C
Page 16 of 20

STATE OF WASHINGTON )
                                          ) SS
COUNTY OF _Franklin_ )

On this _30th_ day of _August_, _2018_, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared DEBBY EASTERDAY, to me known to be the Partner of 3E PROPERTIES, a Washington general partnership, the general partnership that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said general partnership, for the uses and purposes therein mentioned, and on oath stated that _Debby Easterday_ authorized to execute the said instrument and that the seal affixed is the [company/corporate] seal of said general partnership.

Given under my hand and seal of office this _30th_ day of _August_, _2018_.

Notary Public residing at _Pasco, Washington_

Printed Name: _Lauryn A. Hirai_

My Commission Expires: _1/8/2021_

STATE OF WASHINGTON )
                                          ) SS
COUNTY OF _Franklin_ )

On this _30th_ day of _August_, _2018_, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared GALE ALLEN EASTERDAY, to me known to be the Partner of 3E PROPERTIES, a Washington general partnership, the general partnership that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said general partnership, for the uses and purposes therein mentioned, and on oath stated that _Gale Easterday_ authorized to execute the said instrument and that the seal affixed is the [company/corporate] seal of said general partnership.

Given under my hand and seal of office this _30th_ day of _August_, _2018_.

Notary Public residing at _Pasco, Washington_

Printed Name: _Lauryn A. Hirai_

My Commission Expires: _1/8/2021_

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

15

Exhibit C
Page 17 of 20

STATE OF WASHINGTON )
                                              ) SS
COUNTY OF Franklin )

On this 30ᵀᴴ day of August , 2018, before me, the undersigned, a Notary Public in and for the
State of Washington, duly commissioned and sworn, personally appeared KAREN LOUISE EASTERDAY, to me known to be the
Partner of 3E PROPERTIES, a Washington general partnership, the general partnership that executed the foregoing instrument
and acknowledged the said instrument to be the free and voluntary act of and deed of said general partnership, for the uses and
purposes therein mentioned, and on oath stated that Karen Easterday authorized to execute the said instrument and
that the seal affixed is the [company/corporate] seal of said general partnership.

Given under my hand and seal of office this 30ᵀᴴ day of August , 2018.

                                              Lauryn A. Hira
                                              Notary Public residing at Pasco, Washington
                                              Printed Name: Lauryn A. Hira
                                              My Commission Expires: 1/8/2021

3E Properties/EFP MCA 2018
Mortgage, Assignment of Rents and Security Agreement

16

Exhibit C
Page 18 of 20

EXHIBIT A

3E Properties/EFP MCA 2018
MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Legal Description of Real Estate

Franklin County, Washington

Parcel A: (121-231-032)

Lot 1, as delineated on Short Plat No. 98-09, recorded under Auditor's Recording No. 553694, records of Franklin County, Washington.

Parcel B: (121-231-091)

Lot 2, as delineated on Short Plat No. 98-09, recorded under Auditor's Recording No. 553694, records of Franklin County, Washington.

Exhibit C
Page 19 of 20

<u>EXHIBIT B</u>

3E Properties/EFP MCA 2018
MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Additional Property

associated with Mortgage by 3E Properties on land located in Franklin County, Washington

(list specific additional Property, if any)

All refrigeration equipment affixed to the real estate as part of the storage facilities

Leases to Easterday Farms Produce, Co

Exhibit C
Page 20 of 20

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

**CT Lien Solutions**

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> **CT Lien Solutions**
> **P.O. Box 29071**
> **Glendale, CA 91209-9071**
> **USA**

Date of Filing : 09/22/2009
Time of Filing : 10:18:00 AM
File Number    : 2009-265-7986-8
Lapse Date     : 09/22/2024

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Easterday Farms Produce, Co.** | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1427 N 1st Avenue** | **Pasco** | **WA** | **99301** | **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | WA | 601672960 · ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Rabo Agrifinance, Inc.** | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **10100 Trinity Pkwy., Suite 400** | **Stockton** | **CA** | **95219** | **USA** |

4. This FINANCING STATEMENT covers the following collateral:

All of the following described property now owned or hereafter acquired by the Debtor (collectively, the "Collateral"):
(a) Accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments and deposit accounts.
(b) Inventory.
(c) Equipment.
(d) Fixtures.
(e) Farm products.
(f) General intangibles, including, but not limited to, all Intellectual Property (defined

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

**WA-0-20244288-33313843-F-413058 Easterday TN**

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

PAGE 1 OF 2

**2009-265-7986-8**

Continuation of section 4 collateral

---

4. This FINANCING STATEMENT covers the following collateral:

herein).

(g) Accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral.

(h) Substitutes or replacements for any Collateral, all proceeds, products, rents and profits of any Collateral, all rights under warranties and insurance contracts covering the Collateral, and any causes of action relating to the Collateral.

(i) Books and records pertaining to any Collateral, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory ("Books and Records").

PAGE 2 OF 2

2009-265-7986-8

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Lien Solutions800-331-3282 |
| B. E-MAIL CONTACT AT FILER (optional) |
| uccfilingreturn@wolterskluwer.com |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

Date of Filing : 09/04/2018
Time of Filing : 08:31:00 AM
File Number   : 2018-247-0639-4
Lapse Date    : 09/04/2023

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **Easterday Farms Produce, Co.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1427 N. 1st Avenue** | **Pasco** | **WA** | **99302** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **3E Properties** | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1427 N 1st Avenue** | **Pasco** | **WA** | **99302** | **USA** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| **Rabo AgriFinance LLC** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **P.O. Box 411995** | **St. Louis** | **MO** | **63141** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**All Assets**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**WA-0-66329428-55781798**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

PAGE 1 OF 5                                                    **2018-247-0639-4**

Exhibit D
Page 3 of 7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**18a. ORGANIZATION'S NAME**
**Easterday Farms Produce, Co.**

OR

**18b. INDIVIDUAL'S SURNAME**

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

Date of Filing : 09/04/2018
Time of Filing : 08:31:00 AM
File Number   : 2018-247-0639-4
Lapse Date    : 09/04/2023

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

19a. ORGANIZATION'S NAME

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| **Easterday** | **Cody** | **Allen** | |
| 19c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **830 Bellflower Road** | **Mesa** | **WA** / **99343** | **USA** |

20. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

20a. ORGANIZATION'S NAME

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| **Easterday** | **Cody** | | |
| 20c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **830 Bellflower Road** | **Mesa** | **WA** / **99343** | **USA** |

21. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

21a. ORGANIZATION'S NAME

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| **Easterday** | **Jody** | **Dee** | |
| 21c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **7915 W. Dradie St.** | **Pasco** | **WA** / **99301** | **USA** |

22. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (22a or 22b)

22a. ORGANIZATION'S NAME

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 22c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | / | |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (23a or 23b)

23a. ORGANIZATION'S NAME

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 23c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | / | |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)     International Association of Commercial Administrators (IACA)     2018-247-0639-4

PAGE 2 OF 5

Exhibit D
Page 4 of 7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | |
|---|---|
| 18a. ORGANIZATION'S NAME | Date of Filing : 09/04/2018 |
| **Easterday Farms Produce, Co.** | Time of Filing : 08:31:00 AM |
| | File Number   : 2018-247-0639-4 |
| OR  18b. INDIVIDUAL'S SURNAME | Lapse Date    : 09/04/2023 |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

19. ADDITIONAL DEBTOR'S NAME: Provide only <u>one</u> Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **Easterday** | **Jody** | | | |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **7915 W. Dradie St.** | **Pasco** | **WA** | **99301** | **USA** |

20. ADDITIONAL DEBTOR'S NAME: Provide only <u>one</u> Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **Easterday** | **Gale** | **Allen** | | |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **631 Bellflower Road** | **Mesa** | **WA** | **99343** | **USA** |

21. ADDITIONAL DEBTOR'S NAME: Provide only <u>one</u> Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| **Easterday** | **Gale** | | | |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **631 Bellflower Road** | **Mesa** | **WA** | **99343** | **USA** |

22. ☐ ADDITIONAL SECURED PARTY'S NAME  <u>or</u>  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  <u>or</u>  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)    International Association of Commer...    2018-247-0639-4

PAGE 3 OF 5

Exhibit D
Page 5 of 7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 18a. ORGANIZATION'S NAME | |
| **Easterday Farms Produce, Co.** | |
| OR 18b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

Date of Filing : 09/04/2018
Time of Filing : 08:31:00 AM
File Number   : 2018-247-0639-4
Lapse Date    : 09/04/2023

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **Easterday** | **Debby** | | |
| 19c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **830 Bellflower Road** | **Mesa** | **WA** / **99343** | **USA** |

20. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **Easterday** | **Karen** | **Louise** | |
| 20c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **631 Bellflower Road** | **Mesa** | **WA** / **99343** | **USA** |

21. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **Easterday** | **Karen** | | |
| 21c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| **631 Bellflower Road** | **Mesa** | **WA** / **99343** | **USA** |

22. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)        PAGE 4 OF 5        International Association of Commercial Administrators (IACA)    2018-247-0639-4

Exhibit D
Page 6 of 7

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR:  Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | |
|---|---|
| 18a. ORGANIZATION'S NAME<br>**Easterday Farms Produce, Co.** | Date of Filing : 09/04/2018<br>Time of Filing : 08:31:00 AM<br>File Number   : 2018-247-0639-4<br>Lapse Date   : 09/04/2023 |
| OR  18b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX | **THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY** |

19. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  19b. INDIVIDUAL'S SURNAME<br>**Wills** | FIRST PERSONAL NAME<br>**Andrew** | ADDITIONAL NAME(S)/INITIAL(S)<br>**H** | SUFFIX |
| 19c. MAILING ADDRESS<br>**7915 W. Dradie St.** | CITY<br>**Pasco** | STATE **WA**  POSTAL CODE **99301** | COUNTRY<br>**USA** |

20. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  20b. INDIVIDUAL'S SURNAME<br>**Wills** | FIRST PERSONAL NAME<br>**Andrew** | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS<br>**7915 W. Dradie St.** | CITY<br>**Pasco** | STATE **WA**  POSTAL CODE **99301** | COUNTRY<br>**USA** |

21. ADDITIONAL DEBTOR'S NAME:  Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

22. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)    International Association of Commercial Administrators (IACA)    2018-247-0639-4

PAGE 5 OF 5

Exhibit D
Page 7 of 7



**Rabo AgriFinance**
A member of the Rabobank Group
PO Box 411995 - Saint Louis - MO - 63141
Telephone (314) 317 8000 - Facsimile (877) 655 9514
www.RaboAg.com

03/19/2021

3E Properties
C/O Mike Hayes

Obligation No. ███████ – 3E Properties 9769

Dear Client:

The following statement is the amount required to repay the above loan as of 03/18/2021. Please note that interest accrues until funds are received in our National Servicing Center.

| | | |
|---|---|---|
| Principal Balance | as of 03/18/2021 | $437,990.25 |
| Interest on Principal | to 03/18/2021 | $4,440.66 |
| Legal Fees | | $363.43 |
| Interest on Legal Fees | | $3.14 |
| Prepayment Fee | | $33,832.07 |
| Default Interest | | $11,943.60 |
| Total Due | | $488,573.15 |

Per Diem for receipt of funds after 03/18/2021 is $180.45. These repayment figures will not be valid after 03/25/2021. The agreement requires a Treasury Rate lookback 5 days prior to payoff.

The documents will be available for delivery following receipt of certified funds. There will be a delay in forwarding documents for other than certified funds.

Questions regarding the repayment of your loan should be directed to Customer Connect toll free at (855) 722-7766 or at CustomerConnect@RaboAg.com.

Please return your payment with a copy of this letter. To ensure timely delivery of funds, we suggest wired funds. Please contact your Relationship Manager, listed above for instructions. Checks should be mailed to Rabo AgriFinance, PO Box 790077, St Louis, MO 63179-0077.

Sincerely,

*Judy*

Rabo AgriFinance
National Servicing Center

***IMPORTANT***

These figures are subject to final verification upon actual receipt of funds by the Note Holder. Note Holder reserves the right to adjust these figures and (a) negotiate funds as received and request additional funds, (b) refund excess funds remitted or (c) refuse funds as appropriate to the circumstances thereof. These circumstances may be, but are not limited to, an error in the calculation of the payment amount, previously dishonored remittances or additional disbursements made by this Note Holder between the date of this statement and the actual receipt of funds.



**Rabo AgriFinance**
A member of the Rabobank Group
PO Box 411995 · Saint Louis · MO · 63141
Telephone (314) 317 8000 · Facsimile (877) 655 9514
www.RaboAg.com

03/18/2021

Easterday Farms Produce, Co.
C/O Mike Hayes

Obligation No. ███████ - Easterday Farms Produce, Co. 9752

Dear Client:

The following statement is the amount required to repay the above loan as of 03/18/2021. Please note that interest accrues until funds are received in our National Servicing Center.

| | | |
|---|---|---|
| Principal Balance | as of 03/18/2021 | $800,000.00 |
| Interest on Principal | to 03/18/2021 | $5,560.87 |
| Legal Fees | | $1,069.07 |
| Interest on Legal Fees | | $8.18 |
| Default Interest | | $25,104.17 |
| Total Due | | $831,742.29 |

Per Diem for receipt of funds after 03/18/2021 is $292.92. These repayment figures will not be valid after 04/01/2021 or if there are additional payments or advances made on this line of credit. This loan is tied to a monthly rate change.

The documents will be available for delivery following receipt of certified funds. There will be a delay in forwarding documents for other than certified funds.

Questions regarding the repayment of your loan should be directed to Customer Connect toll free at (855) 722-7766 or at CustomerConnect@RaboAg.com.

Please return your payment with a copy of this letter. To ensure timely delivery of funds, we suggest wired funds. Please contact your Relationship Manager, listed above for instructions. Checks should be mailed to Rabo AgriFinance, PO Box 790077, St Louis, MO 63179-0077.

Sincerely,

*Judy*

Rabo AgriFinance
National Servicing Center

***IMPORTANT***

These figures are subject to final verification upon actual receipt of funds by the Note Holder. Note Holder reserves the right to adjust these figures and (a) negotiate funds as received and request additional funds, (b) refund excess funds remitted or (c) refuse funds as appropriate to the circumstances thereof. These circumstances may be, but are not limited to, an error in the calculation of the payment amount, previously dishonored remittances or additional disbursements made by this Note Holder between the date of this statement and the actual receipt of funds.



**Rabo AgriFinance**
A member of the Rabobank Group
PO Box 411995 - Saint Louis - MO - 63141
Telephone (314) 317 8000 - Facsimile (877) 655 9514
www.RaboAg.com

03/18/2021

Easterday Farms Produce, Co.
C/O Mike Hayes

Obligation No. ████5900 – Easterday Farms Produce, Co. 9752

Dear Client:

The following statement is the amount required to repay the above loan as of 03/18/2021. Please note that interest accrues until funds are received in our National Servicing Center.

| | | |
|---|---|---|
| Principal Balance | as of 03/18/2021 | $800,000.00 |
| Interest on Principal | to 03/18/2021 | $5,560.87 |
| Legal Fees | | $1,069.07 |
| Interest on Legal Fees | | $8.18 |
| Default Interest | | $25,104.17 |
| Total Due | | $831,742.29 |

*(handwritten: = 30,673.22 +)*

Per Diem for receipt of funds after 03/18/2021 is $292.92. These repayment figures will not be valid after 04/01/2021 or if there are additional payments or advances made on this line of credit. This loan is tied to a monthly rate change.

*(handwritten: + 4 days per diem 1,171.68 ½ Attorney Fees 7,511.46 8,683.14)*

The documents will be available for delivery following receipt of certified funds. There will be a delay in forwarding documents for other than certified funds.

Questions regarding the repayment of your loan should be directed to Customer Connect toll free at (855) 722-7766 or at CustomerConnect@RaboAg.com.

Please return your payment with a copy of this letter. To ensure timely delivery of funds, we suggest wired funds. Please contact your Relationship Manager, listed above for instructions. Checks should be mailed to Rabo AgriFinance, PO Box 790077, St Louis, MO 63179-0077.

*(handwritten: 840,425.43)*

Sincerely,

Rabo AgriFinance
National Servicing Center

***IMPORTANT***

These figures are subject to final verification upon actual receipt of funds by the Note Holder. Note Holder reserves the right to adjust these figures and (a) negotiate funds as received and request additional funds, (b) refund excess funds remitted or (c) refuse funds as appropriate to the circumstances thereof. These circumstances may be, but are not limited to, an error in the calculation of the payment amount, previously dishonored remittances or additional disbursements made by this Note Holder between the date of this statement and the actual receipt of funds.

**widnerconsulting@gmail.com**

| | |
|---|---|
| **From:** | Tammy Heberlein <Tammy@easterdayfarms.com> |
| **Sent:** | Tuesday, March 23, 2021 2:14 PM |
| **To:** | Michelle Green; widnerconsulting@gmail.com; Jody Easterday |
| **Subject:** | RE: Rabo AgriFinance Rural - Main Payment Scheduled |

Ok, here is rloc. I think we should be good.



**Payment Amount***

☑ Amount Due                                    $807,612.72

   Principal                                     $801,069.07      *800,000.00*
                                                                 *1,069.07*
   Interest                                        $6,543.65

   Pay Additional Principal

☑ Pay Additional Accrued Interest

                                                                 *25,301.25*
                            25,104.17 ←                          ~~26,000.50~~

☑ Pay Fees

                            8,001.46 ←                           *7,511.46*

                    **Total Payment:**            $840,718.35

**Payment Date***                                                *840,425.43*
                                                                   *292.92*
                            **OVERPAID**

   Due Date                                          4/1/2021

   ● **Choose Date**                                 3/23/2021

      3/23/2021

Have a great day,
Tammy Heberlein
Office Manager
Easterday Farms Produce Co.

1



**Rabo AgriFinance**
A member of the Rabobank Group
PO Box 411995 · Saint Louis · MO · 63141
Telephone (314) 317 8000 · Facsimile (877) 655 9514
www.RaboAg.com

03/19/2021

3E Properties
C/O Mike Hayes

Obligation No. ███5475 – 3E Properties 9769

Dear Client:

The following statement is the amount required to repay the above loan as of 03/18/2021. Please note that interest accrues until funds are received in our National Servicing Center.

| | | |
|---|---|---|
| Principal Balance | as of 03/18/2021 | $437,990.25 |
| Interest on Principal | to 03/18/2021 | $4,440.66 |
| Legal Fees | | $363.43 |
| Interest on Legal Fees | | $3.14 |
| Prepayment Fee | | $33,832.07 |
| Default Interest | | $11,943.60 |
| Total Due | | $488,573.15 |

*(handwritten: 16,387.40)*

Per Diem for receipt of funds after 03/18/2021 is $180.45. These repayment figures will not be valid after 03/25/2021. The agreement requires a Treasury Rate lookback 5 days prior to payoff.

*(handwritten: + 4 days per diem 721.80)*
*(handwritten: + ½ attorney fees 7,511.46)*
*(handwritten: 496,806.41)*

The documents will be available for delivery following receipt of certified funds. There will be a delay in forwarding documents for other than certified funds.

Questions regarding the repayment of your loan should be directed to Customer Connect toll free at (855) 722-7766 or at CustomerConnect@RaboAg.com.

Please return your payment with a copy of this letter. To ensure timely delivery of funds, we suggest wired funds. Please contact your Relationship Manager, listed above for instructions. Checks should be mailed to Rabo AgriFinance, PO Box 790077, St Louis, MO 63179-0077.

Sincerely,

*Trudye*

Rabo AgriFinance
National Servicing Center

***IMPORTANT***

These figures are subject to final verification upon actual receipt of funds by the Note Holder. Note Holder reserves the right to adjust these figures and (a) negotiate funds as received and request additional funds, (b) refund excess funds remitted or (c) refuse funds as appropriate to the circumstances thereof. These circumstances may be, but are not limited to, an error in the calculation of the payment amount, previously dishonored remittances or additional disbursements made by this Note Holder between the date of this statement and the actual receipt of funds.

**widnerconsulting@gmail.com**

| | |
|---|---|
| **From:** | Tammy Heberlein <Tammy@easterdayfarms.com> |
| **Sent:** | Tuesday, March 23, 2021 3:08 PM |
| **To:** | widnerconsulting@gmail.com |
| **Subject:** | FW: Rabo AgriFinance Rural - Main Payment Scheduled |

Have a great day,
Tammy Heberlein
Office Manager
Easterday Farms Produce Co.
O: 509.544.9595

**From:** Rabo AgriFinance Rural - Main <RaboAgriFinance@billerpayments.com>
**Sent:** 03/23/2021 3:07 PM
**To:** Tammy Heberlein <Tammy@easterdayfarms.com>
**Subject:** Rabo AgriFinance Rural - Main Payment Scheduled

Dear TAMMY HEBERLEIN,

This email is to confirm a payment received on 03/23/2021 through Online Payment Processing for your Rabo AgriFinance Rural - Main loan obligation number ending XXXX5475.

A one-time payment of $496806.41 has been scheduled with a date of 03/23/2021. The funding source that will be debited for this payment is your account number ending XXXX6904.

Payment Details

Obligation Number: ▇▇▇5475

Principal Amount: 30900.35

Interest Amount: 5266.89

Fees Amount: 41706.96

Additional Principal Amount: 407089.9

Accrued Interest Amount: 11842.31

The unique confirmation number for this payment is ODVB5F6TN2.

We appreciate your business. Thank you for using Online Payment Processing at

www.raboagconnect.com.

1

Exhibit F
Page 4 of 5

3/24/2021                                  Current Day Account Activity Report

**BANK OF AMERICA**

| Transaction Details | |
|---|---|
| Date: | 03/24/2021 |
| Account Number: | |
| Bank ID: | |
| Transaction: | Preauthorized ACH Debit (455) |
| Currency: | USD |
| Amount: | 840,718.35 |
| Credit/Debit: | DEBIT |
| Customer Ref #: | 000000000000 |
| Bank Reference: | 83009299996 |
| Value Date: | |

| | |
|---|---|
| Immediate Avail: | 0.00 |
| 1 Day Float: | 0.00 |
| 2 Day Float: | 0.00 |
| Text: | Rabo AgriFinance DES:WEB PMT ID:110811923 INDN:Easterday Farms Produc CO ID:F581571529 WEB |

Exhibit F
Page 5 of 5

**From:** Teisha Brincat
**Sent:** Wednesday, March 31, 2021 10:34 AM
**To:** 'mjohnson@rqn.com' <mjohnson@rqn.com>
**Cc:** Michelle Green <michelle@ggw-law.com>
**Subject:** Rabo AgriFinance LLC ("RAF") Notice of Events of Default dated 2/23/21

Good Morning, Mr. Johnson,

Please see the above attached letter from Michelle Green, which has been mailed to you via USPS Mail today.

Thank you,

-T

Teisha R. Brincat



NOTICE: This electronic mail message and any files transmitted with it are intended exclusively for the individual or entity to which it is addressed. The message, together with any attachment, may contain confidential and/or privileged information. Any unauthorized review, use, printing, saving, copying, disclosure or distribution is strictly prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete all copies. To the extent that this message or any attachment concerns tax matters, it is not intended to be used and cannot be used by a taxpayer for the purpose of avoiding penalties that may be imposed by law.



Via Mail and Email: mjohnson@rqn.com

March 31, 2021

Mr. Michael Johnson
Ray Quinney & Nebeker
PO Box 45385
Salt Lake City, Utah 84145-0385

RE: Rabo AgriFinance LLC ("RAF") Notice of Events of Default dated 2/23/21

Dear Mr. Johnson:

As you know, this law firm represents Easterday Farms Produce, Co. ("EFPC") and 3E Properties ("3E"). We have reviewed RAF's Renewed Notice of Default, Demand for Payment and Satisfaction and Full Reservation of Rights dated February 23, 2021 (the "Notice of Default").

In response, and on behalf of EFPC and 3E, we requested that RAF provide full payoff calculations on the following loans, referred to as Loan Obligation Nos. ████5475 and ████5485, as of March 17, 2021, to include a per diem amount for each day after March 17, 2021:

1. RLOC Credit Agreement Loan (as defined in the Notice of Default); and
2. RE Term Loan Credit Agreement Loan (as defined the Notice of Default).

Thereafter, RAF provided payoff statements for the above loans, as well as for the Vendor Credit Agreement (as defined in the Notice of Default). EFPC and 3E have now paid the RLOC Credit Agreement Loan and the RE Term Loan Credit Agreement Loan in full, including the entirety of the attorney's fees and costs claimed by RAF, notwithstanding our disagreement that any such attorney's fees and costs relate to defaults pertaining to RLOC Credit Agreement Loan and the RE Term Loan Credit Agreement Loan, versus the Vendor Credit Agreement.

On behalf of EFPC and 3E, and based upon the full payment of the RLOC Credit Agreement Loan and the RE Term Loan Credit Agreement Loan, we hereby demand that the following RAF security documents are released, terminated and/or satisfied:

1. UCC Financing Statement 2007-193-4236-5 (Paid in full 1/1/2018) – Please note that EFPC and/or 3E previously requested termination 9/10/20;
2. UCC Financing Statement 2008-178-6127-0 (Paid in full 10/1/2018) – Please note that EFPC and/or 3E previously requested termination 9/10/20;
3. UCC Financing Statement 2009-265-7986-8;
4. Mortgage, Security Agreement, Fixture Filing, & Financing Statement dated September 4, 2009;
5. UCC Financing Statement 2009-268-8977-6;
6. UCC Financing Statement 2018-247-0639-4; and
7. Mortgage Security Agreement, Fixture Filing, & Financing Statement dated August 9, 2018.

Please let us know any questions.

Sincerely,

MICHELLE A. GREEN

MAG:trb
cc:     Lindy Widner via email
        Jody Easterday via email

# QuickLink Credit®

Application and Account Agreement

 Rabo AgriFinance

## Applicant Information

Firct Name: Cody
Middle Initial: A
Last Name: Easterday
Suffix:
Social Security Number

Phone
(509) 547-9600
Alt. Phone
(509) 947-4991
Date of Birth

Email
cody@easterdayfarms.com

**Physical Address**
Street: 830 Bellflower Rd
City: Mesa
State: WA
Zip: 99343

US Citizen: Yes

**Mailing Address**
Street: 830 Bellflower Rd
City: Mesa
State: WA
Zip: 99343

Bankruptcy Filing: No

## Entity Information

Legal Name: Easterday Farms
Entity Type: General Partnership
Tax Identification Number:

State of Organization
WA
Date of Organization
01/01/1990
Phone

**Physical Address**
Street: 5235 N Industrial Way
City: Pasco
State: WA
Zip: 99301

**Mailing Address**
Street: 5235 N Industrial Way
City: Pasco
State: WA
Zip: 99301

## Primary Line of Business

Onions & potatoes

## Financial

**Balance Sheet**

Date of Balance Sheet: 10/31/2019

| Assets | Liabilities | Income |
|---|---|---|
| Current Assets: $76,773,944.00 | Current Liabilities: $74,335,036.00 | Gross Crop Income: $0.00 |
| Intermediate Assets: $0.00 | Intermediate Liabilities: $0.00 | Gross Livestock Income: $0.00 |
| Term Assets: $41,624,070.00 | Term Liabilities: $19,507,545.00 | Other Farm Income: $0.00 |
| Total Assets: $118,398,014.00 | Total Liabilities: $93,842,581.00 | Total Farm Income: $0.00 |

Total Equity: $24,555,413.00

| Crop | Acres | Average Yield | Livestock | Count |
|---|---|---|---|---|

## Dealer Information

Vendor Name: J R Simplot Company
Dealer Name:
Dealer Phone:
Credit Limit: $1,000,000.00

**Dealer Address**
Street:
City:
State:
Zip:

You promise to pay to Rabo AgriFinance LLC, (referred to herein as "RAF"), or its successors or assignees at Post Office Box 410650, Saint Louis, Missouri 63141, the outstanding principal balance and accrued interest on this QuickLink Credit® Application and Account Agreement (hereinafter the "Agreement") as agreed and further described below. The words you, your, and yours mean each person and/or entity who applies for and is granted credit pursuant to this Agreement. You authorize any one or more dealers (each hereinafter a "Dealer") who has been approved by RAF to conduct business pursuant to one or more written agreements with RAF to submit proof(s) of your purchase(s) of products and/or services to RAF and for RAF to provide advances in payment of such purchases under this Agreement (each hereinafter an "Advance" or "Advances") and you authorize RAF to advance, at its option, under this Agreement sufficient funds to satisfy any outstanding obligations to Dealer. Advances shall be equal to the amounts identified on the invoices or other proofs of purchase, sale or delivery submitted by Dealers to RAF. You understand and agree that RAF may rely on all invoices or other proofs of purchase, sale or delivery submitted by the Dealer whether such invoices or other proofs of purchase, sale or delivery are submitted verbally, in writing or electronically to the same extent as if you had personally signed a receipt for such purchase or other request for payment. Each Advance is deemed to be an advance of funds to you under this Agreement.

Conditions: You understand that no Advances will be made under this Agreement until this Agreement is approved by RAF. You understand that RAF may at any time discontinue your ability to receive Advances or have Advances made on your behalf under this Agreement if any of the following occur: 1) if the total of any invoice or other proof of purchase, sale or delivery, when combined with the current principal balance of this Agreement, would cause the amount due on this Agreement to exceed the maximum credit limit approved by RAF; 2) the Draw Period (as defined herein) has passed; 3) you are in default of this Agreement, any of the Security Documents (as defined herein) or any supporting loan documents; 4) the request is not allowed under the then currently existing policies and procedures of RAF in effect under this financing program; or 5) there has been a material adverse effect in your ability to satisfy your obligations to RAF, as determined solely by RAF.

Credit Limit: When the Agreement is approved by RAF, RAF shall then notify you of its approval and the applicable Draw Period (as defined herein). You understand that the maximum amount of revolving credit available to you at any one point in time will be identified in the approval letter or other notice issued by RAF, and regardless of the amount specified on this Agreement the actual credit available hereunder shall not exceed the credit approved by RAF. However, RAF may, in its sole discretion, make an Advance for purchases in response to your request which exceeds such limit. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in

this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Draw Period:** The Draw Period is the time period during which Advances may be made under this Agreement. RAF may modify the Draw Period at its sole discretion. Advances, including Advances for Special Promotions (as defined herein), will only be available if the Draw Period extends beyond the availability of the Special Promotion. However, RAF may, in its sole discretion make an Advance for purchases in response to your request which exceeds the Draw Period. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Special Promotions:** You may participate in one or more programs including special promotional financing terms, such as extended fee periods, incentive interest rates on certain purchases or for limited time periods or other promotions that may be available at RAF's and/or Dealer's discretion (each of these defined herein as "Special Promotions"). These Special Promotions may be disclosed by the Dealer at the time of your purchase or by RAF. Eligibility requirements for Special Promotions vary by dealer and are offered at RAF's and/or Dealer's discretion. The applicable Special Promotion will be identified in your Billing Statements (as defined herein). You understand and agree to the following:

**Advances:** Each Advance shall be subject to the terms and conditions of any applicable Special Program and shall include its own Maturity Date (as defined herein), interest rate and Payment Terms.

**Disclaimer of Warranties:** You agree that purchases financed by RAF have not been produced or manufactured by RAF. You acknowledge that you are purchasing the products and/or services from the Dealer and/or manufacturer and not RAF. You understand and agree that RAF is financing the purchase for you on an as-is, where-is basis without any warranty, expressed or implied, by RAF. This includes any IMPLIED WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT AND/OR FITNESS FOR ANY PARTICULAR . You understand that the products and/or services may be covered by warranty of the manufacturer and/or Dealer. Such warranties are usually in writing and attached to the product or their containers. You understand that such warranties may be limited and that you will direct any questions or complaints directly to the manufacturer and/or Dealer and that you will not raise any defenses to this Agreement based upon the products or services you have purchased.

**Return of Purchases:** You agree that if you return a purchase financed through the use of this Agreement, you will return the purchase to the Dealer who delivered the purchase to you and you will cause any and all payments or credits for all refund amounts, as determined by Dealer's policies, to be sent directly to RAF. Any such returns and refunds will not diminish or otherwise affect your obligation to RAF for the repayment in RAF of any and all monies advanced on your Agreement, including, but not limited to, monies owing on account of the financing of the purchases returned unless and until such credit is received by RAF.

**Interest Rate:** You agree to pay interest from the earlier of a) the time of an Advance or b) the date on which RAF becomes obligated to make an Advance on your behalf (each a "Time of Each Advance") regardless of whether or not you actually obtained possession of or received the product or service on that date, subject to any applicable grace periods. For Advances not subject to Special Promotion or for those time periods when a Special Promotion does not apply, you agree to pay from the Time of Each Advance until paid in full interest, at the non-default annual rate equal to ten percent (10.00%) in excess of the Prime Rate (the "Standard Rate"), which rate shall be adjusted as of each day of change thereof to reflect changes in the Prime Rate. Any change in your interest rate, except a change due to a change of the Prime Rate, expiration of a Special Promotion or event of default, will be as disclosed to you in a subsequent notice as provided in the section entitled "Changes to Your Account Agreement and Credit Limit." For purposes of this Agreement, the term "Prime Rate" shall mean the rate of interest described as the prime rate of leading financial institutions as published from time to time in "The Wall Street Journal-Midwest Edition" provided however, that at any time the Prime Rate is less than zero, the Prime Rate used in this Agreement for the interest rate calculation shall be zero. Any interest or principal hereof which is not paid by the Maturity Date or subsequent to any other event of default shall bear interest until such amounts are paid in full at the rate of twenty-one percent (21%) per year. All interest hereunder shall be calculated based on a year of 360 days and the actual number of days elapsed. Notwithstanding anything to the contrary herein, the interest rate shall at no time exceed the maximum rate, if any, prescribed by applicable law. Upon expiration of a Special Promotion rate you agree that the rate will be automatically and immediately, without additional notice, adjusted to the Standard Rate.

**Texas Residents:** The ceiling rate for this Agreement, both before and after maturity, is the (weekly) ceiling rate announced by the Credit Commissioner from time to time. RAF will assess a minimum interest charge of $.50 in a billing period.

**Minimum Interest Charge:** If interest is accruing on the principal balance due under this Agreement, but the total of such interest for purchases is less than $.50 in a billing period, RAF will assess a minimum interest charge of $.50 in a billing period.

**Payments:** Each Special Promotion program may include separate payments identified in your Billing Statement. Failure to make any payment on time may be considered a default under this Agreement. The balance shown on your Billing Statement may include amounts subject to different periodic rates. The sooner you pay the balance shown on your Billing Statement, the less you will pay in interest. Instructions for making payments are on your Billing Statement. In order to be credited as of a particular day, your payment must be received by RAF by the date and time specified in the Billing Statement. Do not send cash payments. RAF can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of its rights under this Agreement. If your payment date is a Saturday, Sunday or holiday, the payment due date will not be extended. You may, at any time, prepay the balance due under this Agreement in full or make partial repayments hereon, without penalty or premium. Depending upon the terms of any applicable Special Promotion governing your Advance(s), all or a portion of your balance may require periodic payments. For that portion of your balance that requires a periodic payment, RAF must receive at least the Minimum Payment (as defined herein), as calculated below, by the payment due date. The Minimum Payment (as defined herein) is calculated as follows: the sum of all accrued interest plus interest which is estimated to accrue through the payment due date plus any principal reduction required based on the applicable program criteria (which you acknowledge receipt of or as may be subsequently disclosed to you by RAF or Dealer) plus any amount that is past due and any amount in excess of your credit limit plus any costs and/or fees incurred by RAF in connection with this Agreement ("Minimum Payment"). An increase in the variable rate will have the effect of increasing the monthly and final payments.

**Maturity Date:** The maturity date is the date in which the Advance is due in full ("Maturity Date"). The Maturity Date of each advance shall be identified to you by RAF on the Billing Statement (as defined herein). Failure to pay this amount on the Maturity Date constitutes a default under this agreement.

**Determination of the Total Due:** The total outstanding balance (the amount you owe RAF) is equal to your current principal balance plus accrued interest. To calculate the total outstanding balance, RAF begins with the outstanding principal balance on your account at the beginning of each billing period and adds any purchases and subtracts any credits or payments credited in that billing period. RAF then adds the applicable interest charges, fees and costs and then makes any other applicable adjustments.

**Payment Application:** RAF shall apply payments in its sole discretion. Generally, payments will be applied first to fees and costs of collection, if any, then to accrued and unpaid interest, and then in reduction of the outstanding principal balance, and RAF will allocate payments to pay off balances at lower periodic interest rates before paying off balances at higher periodic interest rates.

**Credit Balance:** If you have a credit balance in your account under this Agreement, RAF may return to you any credit over $30.00. You may request a refund of a credit balance at any time. RAF may reduce the amount of any credit balance by the amount of any new Advance. If after ninety days a credit balance of less than $30.00 remains in your account, you will forfeit the amount to RAF.

**Billing Statement:** Your billing statement, as prepared by RAF, shows the total balance, any interest charges, fees, costs, the minimum payment due and the payment due date ("Billing Statement" or "Billing Statements"). The Billing Statement may also show your current Agreement credit limit, an itemized list of current purchases, payments and credits, an interest rate summary or other important information. If RAF deems your account uncollectible or if RAF initiates collection proceedings, RAF, in its sole discretion, may stop sending you Billing Statements. However, interest charges, fees and costs will continue to accrue regardless of whether RAF sends you Billing Statements. RAF will send Billing Statements to you on dates and intervals as determined by RAF. The Billing Statements will be deemed correct and accepted by you unless you notify RAF in writing within 20 days of the date of the Billing Statement. If you believe there is an error on your Billing Statement, you must notify RAF, in writing, at P.O. Box 410650, Saint Louis, MO 63141 within the 20 day period.

**Billing Address and Name:** You must notify RAF of any changes in your mailing address and/or name by contacting RAF at (888) 395-8505 or any subsequent telephone number as may be shown on your Billing Statement. For your protection, RAF may require written confirmation of your address or name change(s). RAF will mail your Billing Statement to only one address.

**Changes to Your Account Agreement and Credit Limit:** Except as otherwise prohibited by law, at RAF's discretion, RAF may change your credit limit, Maturity Date, fees, costs, interest rate, Special Promotion, or other terms of your Agreement at any time. RAF will notify you of any change to your Agreement either by sending you a separate notice or through your Billing Statement. A change may take effect before you receive notification from RAF. You may request a change to your credit limit by contacting RAF at (888) 395-8505 or at any subsequent telephone number as may be shown on your Billing Statement. RAF may request additional documentation from you before approving or denying changes you request to your credit limit. RAF can add or delete provisions relating to your Agreement and to the nature, extent and enforcement of the rights and obligations RAF or you may have relating to this Agreement. These changes are binding on you. In the event any change will cause a fee, rate or minimum payment to increase (other than due to a change in the Prime Rate, expiration of a Special Promotion or event of default), RAF will mail you written notice at least 15 days before the beginning of the billing period in which the change will become effective. If you do not agree to the change, you must notify RAF in writing within 25 days after the effective date of the change and pay RAF the total outstanding balance under the terms of the unchanged Agreement. Any charges made pursuant to this Agreement by you after the effective date of the change will be deemed acceptance by you of the change, even if the 25 days have not expired.

**Security Documents:** This Agreement shall be secured by any existing and future security agreements, mortgages, deeds of trust or other pledges of collateral (the "Security Documents") between RAF and you, if any. You understand that RAF may require a pledge of collateral to secure the credit or financing applied for in the event that you fail to meet RAF's criteria for providing unsecured credit or financing.

**Security Interest :** In addition to any other security pledges granted to RAF, you grant RAF a purchase money security interest in all purchases financed under your Agreement and the proceeds of the purchases, including insurance proceeds. This provision does not apply if you reside in North Carolina and the interest on a purchase or transaction exceeds 15%. RAF's security interest continues until the purchase is paid for in full by application of your payments in the manner described in this Agreement.

**Default:** You understand that you will be in default of this Agreement if any one or more of the following events occur: 1) you fail to make payment of the amount due on the Maturity Date; 2) you fail to keep any other promise, under this Agreement or any other loan document, with RAF; 3) you are in default pursuant to the terms of any other loan or loan document you have with RAF; 4) any other creditor of yours attempts to collect the debt you owe them through court proceedings; 5) you die; 6) you file bankruptcy; 7) you do or fail to do something which causes RAF to reasonably believe you will not be able to satisfy your obligations you owe to RAF.

**Collection of Costs:** You agree that you will be liable to RAF for any costs incurred by RAF in perfecting its secured position in the event that this Agreement is secured with any collateral. You authorize RAF to advance sufficient funds under this Agreement to pay all costs incurred by RAF in perfecting its security position. To the extent not prohibited by law you also agree that you will pay all costs of collection, whether secured or not, including reasonable attorney fees, together with interest at the default rate if you do not timely pay your obligations to RAF.

**Late Payment Fee:** If within 20 days after the payment due date, RAF has not received the total outstanding balance, RAF may add to your balance(s) due a late payment fee of $35.00.

**Returned Payment Fee:** If you send RAF a check or electronic authorization that is dishonored upon first presentment, RAF may add to your balance a fee of $35.00.

**Annual Fee:** There are no annual fees to have this Agreement.

**Applicable Law:** This Agreement shall be governed by the laws of the State of Iowa.

**Remedies:** If you are in default of this Agreement, you understand that RAF has any and all of the following remedies: 1) RAF may demand immediate payment in full of all that you owe RAF under this Agreement; 2) RAF may setoff against any rights you have to payment from RAF; 3) RAF may demand additional security or additional parties to be obligated to pay your obligations in exchange for not immediately using any of the other remedies in this paragraph; 4) RAF may refuse to make any additional Advances under this

Agreement; 5) RAF may seek any collection efforts of any collateral that may exist under any agreement between RAF and you; or 6) RAF may use any other remedy available under any appropriate state or federal law. By selecting one or more of these remedies, RAF does not give up its right to use any other remedies. If RAF, in its sole discretion, waives its right to exercise any remedy upon the event of default, RAF does not waive its right to later exercise any remedies based upon such default.

**Waiver:** By execution of this Agreement you agree you will not require RAF to: 1) demand payment of the amounts due (presentment); 2) obtain official certification of non-payment (protest); 3) give notice that the amounts due have not been paid (notice of dishonor); 4) give notice of intention to accelerate; or 5) give notice of acceleration. You also give up any rights you may have under any valuation or appraisal laws, which may apply to you.

**Consent to Jurisdiction:** You agree that the acceptance and approval of the Agreement occurred in Cedar Falls, Iowa and that performance of this Agreement by you involves payment to RAF in Cedar Falls, Iowa. You knowingly and voluntarily consent to be subject to the jurisdiction in the State of Iowa for purposes of adjudicating any rights and liabilities of the parties pursuant to this Agreement, with venue to be in the Iowa District Court for Black Hawk County, Iowa, or the United States Federal District Court for the Northern District of Iowa.

**Telephone Monitoring and Recording:** RAF may monitor and record your telephone calls with RAF to assure the quality of RAF's service.

**Canceling the Account Agreement:** You may cancel this Agreement at any time by notifying RAF in writing. In the event you cancel the Agreement, you remain responsible to pay the principal balance, interest, costs and fees according to the terms of the Agreement.

**Assignment:** RAF reserves the right to assign any or all of RAFAC''s rights and obligations under this Agreement to a third party. You shall not assign any or all of your rights and obligations under this Agreement without the written permission of RAF.

**Unauthorized Use of the Agreement:** If you believe there has been any unauthorized use or charges to your Agreement, you must notify RAF immediately by calling (888) 395-8505 or any subsequent telephone number as may be shown on the Billing Statement. You may require you to provide certain information in writing to help RAF determine what happened, and to comply with such procedures as RAF may require for RAFAC''s investigation.

**Facsimile:** In the event that any signature is delivered by facsimile (fax) transmission or by e-mail delivery of a ".pdf" format data file, such signature shall be considered a binding signature and shall have the same force and effect as an original signature. You shall ensure that all documents bearing the original signature will be forwarded to RAF as soon as possible after being faxed or emailed via "pdf", but failure to provide such documents with original signatures shall not affect the ability of either party to rely on fax signatures to the same extent as an original.

**Disclosure of Information:** If your Agreement is approved, RAF may from time to time, use the above information and other personal information collected or compiled by RAF in connection with this Agreement (including account status and payment history) (collectively the "Information") and share the Information with Dealers and RAFAC''s affiliates and/or agents for the purposes of including, but not limited to, opening, administering, servicing, transacting on and enforcing your agreements, collecting amounts owing to RAF or its assignees, verifying and evaluating your current and ongoing creditworthiness and financial status, responding to your inquiries and otherwise communicating with you regarding your account(s), including contacting you regarding extensions or renewals of this Agreement. You acknowledge to be bound by and consent to RAF's most recent Privacy Policy as it appears on the rabo.ag website.

**Representation and Warranties:** You represent and warrant that all information you provided in the Agreement is true and correct. You acknowledge all information contained in the Agreement is material and serves as the basis for RAF making a credit decision on the Agreement. You further represent and warrant that the extension of credit evidenced by this Agreement is for business, commercial or agricultural purposes and is not for consumer purposes. Your submission of any report, record or other information pertaining to you or any of your subsidiaries conditions or operations, financial or otherwise, from time to time, whether or not required under the terms of this instrument, will be deemed to be accompanied by a representation by you that such report, record or information is complete and accurate in all material respects as to your or any of your subsidiaries (and, if applicable, any of your subsidiaries' partners, shareholders, members, or other principals) conditions or operations, as of the date of such submission, including, without limitation, all material contingent liabilities, conditions or operations.

**Notice to Missouri Applicants:** Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the Agreement. To protect the Applicant(s) under this Agreement and RAF from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this Agreement and the Security Documents which are the complete and exclusive statements of the agreement between us, except as we may later agree in writing to modify such documents.

**Michigan Business Purposes Affidavit:** If you are a resident of Michigan or if your primary business address is in Michigan, by signing below you hereby certify that you are engaged in the business of commercial farming and that all products purchased on credit or other loan proceeds otherwise made available to you under this Agreement will be used exclusively for commercial agricultural purposes. This declaration is made under penalty of perjury.

**Affirmations:** By Signing below, you agree to the following:

1) You certify that the Agreement is submitted on your behalf for the purpose of procuring, establishing and maintaining credit from time to time with RAF and that all information provided in the Agreement is true and accurate as of this date, including but not limited to your physical address, date of birth and social security number.

2) You have carefully read the information contained within the Agreement and warrant it to be complete, true and accurate as of the dates set forth below and that RAF and its affiliates may continue to rely upon the Agreement continuing to be true and correct unless and until a written notice of change is given by you. In conjunction with the submission of your Agreement, you authorize RAF to obtain a credit bureau report from any credit reporting agency and to request confirmation of financial or other information of any kind whatsoever from any third party having dealings with you.

3) You have read, understand and agree to the terms of this Agreement consisting of four pages. You agree to the terms and conditions of this Agreement as written by RAF without any changes by you. Any changes you make to this Agreement without the written consent of RAF shall be null and void. You have retained a signed copy of this Agreement.

4) You agree that there is and shall be no oral commitment to extend credit to you and that a written commitment signed by RAF, under and if the Agreement is approved, shall constitute the only form of commitment by RAF. RAF shall have no liability to you or others in the event your Agreement is denied. If a loan shall be offered to, and accepted by, you offering so to amend, plan, rate, term or in any other respect from that hereinbefore negotiated, this Agreement shall nevertheless constitute your application for the loan actually accepted by you.

5) Your obligations as the applicant and a borrower and any co-borrower shall be joint and several. Each and every individual and entity signing below shall be held to be an applicant and a borrower.

6) If you are a partnership, corporation or other entity and you are signing on behalf of such entity, you hereby warrant and certify that you have been duly appointed and authorized by the entity to act on its behalf with respect to this Agreement and the credit and financing applied for, and you are so authorized to transact such business on behalf of the partnership, corporation or other entity as of the date hereof. You further agree to notify RAF immediately of any ownership changes of any entity listed on this Agreement.

7) You agree that RAF may notify any Dealer in the event your Agreement is approved or denied and RAF may advise the Dealer as to the credit limit and amount of credit remaining available on your Agreement.

8) You authorize any third party to release to RAF and for RAF to obtain, written or oral credit information from any source whatsoever, including, but not limited to, credit reporting agencies and any governmental agency, even if such information would otherwise be protected under any financial privacy acts.

**USA PATRIOT Act –Customer Identification Program** –Enacted to help the government fight the funding of terrorism and money laundering activities. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who applies for a loan. When you apply for a loan we will ask you for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Amount Requested**

Amount Requested: $1,000,000.00

**Endorsement**

Applicant Signature

_(signature)_

Date: 3/6/20

**Endorsement**

Title: Owner

Authorized Representative Signature

_(signature)_

Entity Name: Easterday Farms

Date: 3/6/20

**ADDENDUM – CERTIFICATION OF BENEFICIAL OWNERS**
Form & Signature Below are Required if Applying as an Entity

ORIGINAL

AFN # 1946471 PREL
09/07/2021 03:52 PM
2 Page(s) $204.50
Matt Beaton, Auditor
Franklin Co., WA

## FRANKLIN COUNTY RECORDING COVER SHEET

**NAME AND RETURN ADDRESS:**
Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

FORM COMPLETED BY: CT Lien Solutions                    PHONE # _____
PLEASE PRINT OR TYPE INFORMATION:

**DOCUMENT TITLE(S)** (or transaction contained therein)
1. Satisfaction of Mortgage
2.
3.

**GRANTOR(S)** (Last name, first name, middle name/initials):
1. 3E Properties, a Washington general partnership
2.
3.
4.
  ☐ Additional names on page _____ of document

**GRANTEE(S)** (Last name, first name, middle name/initials):
1. Rabo AgriFinance LLC
2.
3.
4.
  ☐ Additional names on page _____ of document

**LEGAL DESCRIPTION** (Abbreviated: ie.lot, block, plat or section, township, range)

Lots 1 and 2 Short Plat 98-09

  ☐ Additional legal is on page _____ of document

**AUDITOR'S REFERENCE NUMBER(S)**
1883943

**ASSESSOR'S PROPERTY TAX PARCEL NUMBER**

121231032, 121231091
  ☐ Additional parcel numbers on page _____ of document

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information

### EMERGENCY NONSTANDARD REQUEST

I am requesting an emergency nonstandard recording for an additional fee of $50.00 as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

_____          _____
Signature                                   Date

Exhibit I
Page 1 of 5

When Recorded Return To:
**LIEN SOLUTIONS**
**PO BOX 29071**
**GLENDALE, CA91209-9071**

Prepared By:
**CT LIEN SOLUTIONS**
**PO BOX 29071**
**GLENDALE , CA 91209-9071**
**Assessor's Parcel or Account Number: 121-231-032,121-231-091**

## SATISFACTION OF MORTGAGE



WHEREAS the indebtedness secured by the mortgage described below has been fully paid and satisfied, **Rabo AgriFinance LLC** , **P.O. Box 411995, St. Louis, MO, 63141** , owner and holder of the debt, hereby declares that the lien of said mortgage is forever discharged and satisfied.

**Section: n/a**
**Range Number: n/a**
**Lot: 1 and 2**
**Subdivision: n/a**

Original Mortgagee: **Rabo AgriFinance LLC**   Mortgagee's Address:  **P.O. Box 411995, St. Louis, MO, 63141**
Original Mortgagor: **3E PROPERTIES, a Washington general partnership**
Property Address: **undisclosed area, undisclosed area, WA**

Recorded in **Franklin County** , WA, on **09/04/2018**  as Inst # **1883943**

Date of Mortgage:  Amount of Mortgage: **Undisclosed Amount**

Dated: **08/24/2021**

Lender:
**Rabo AgriFinance LLC**

By: **Aaron Bixby**
Its: **Vice President**

STATE OF **IOWA, BLACK HAWK COUNTY**

On **August 24, 2021** before me, the undersigned, a notary public in and for said state, personally appeared **Aaron Bixby, Vice President** of **Rabo AgriFinance LLC** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public **Kurt R. Leistikow**

Commission Expires: __7/03/2023__

**KURT R LEISTIKOW**
Commission Number 185382
My Commission Expires
**July 3, 2023**

Page # 1  82109558 RPY Ref# 3072007 8477 WA021 Franklin Coun

Exhibit I
Page 2 of 5

After recording return to:

Michael R. Johnson
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

AFN # 1946470 PR
09/07/2021 03:52 PM
3 Page(s) $205.50
Matt Beaton, Auditor
Franklin Co., WA

# PARTIAL RELEASE OF MORTGAGE

KNOW ALL PERSONS BY THESE PRESENTS, that Rabo AgriFinance LLC, fka Rabo Agrifinance, Inc., individually and as administrative agent ("Mortgagee"), the owner and holder of the certain mortgage bearing date of September 14, 2009, ("Mortgage") recorded in the office of the County Auditor of Franklin County, State of Washington, on September 18, 2009 under Auditor's File No. 1740144, executed by Easterday Farms Produce, Co., 3E Properties, Gale Easterday, Karen Easterday, Cody Easterday, Debby Easterday, and Jody Easterday (collectively "Mortgagors") to secure payment of the sum of Eleven Million Five Hundred Thousand and NO/100 dollars ($11,500,000.00) with interest, and all other obligations to Mortgagor, as described in the Mortgage, including, but not limited to the payment of such additional loans or advances and such other debts, obligations and liabilities of every kind or character, of Mortgagor or the maker of the Note (as defined in the Mortgage), evidenced by a promissory note, guaranty, or otherwise, whether one or more, now existing or arising in the future, in favor of the applicable Mortgagee or any other person; PROVIDED HOWEVER THAT such other loans, advances, debts, obligations and liabilities shall be secured by the Mortgage only if the promissory note, guaranty, or other document evidencing such shall recite that it is to be secured by the Mortgage for value received, does hereby release and discharge from the lien of the said Mortgage **ONLY** the following described portion of the mortgaged premises, situated in the County of Franklin, State of Washington, to wit:

Abbreviated Legal:    Portion of SW4 of 8-9-30

The complete legal description is attached hereto as Exhibit A.

Parcel No. 113130040

This release shall not impair the lien of the Mortgage upon and as to any other lands described in the Mortgage which are not specifically hereby released.

Exhibit I
Page 3 of 5

DATED this 25th day of August 2021.

                    RABO AGRIFINANCE LLC,
                    fka Rabo Agrifinance, Inc., a Delaware limited
                    liability company

                    By:  Aaron Bixby
                    Its:  Vice President

STATE OF IOWA             )
                              )ss:
COUNTY OF BLACKHAWK   )

     The foregoing document was duly acknowledged before me on August 25, 2021, by Aaron Bixby, a Vice President of Rabo AgriFinance LLC, fka Rabo Agrifinance, Inc., who duly acknowledged to me that he executed the same in his capacity as an authorized representative of the company.

                    Print Name:  Kurt R. Leistikow
                    NOTARY PUBLIC in and for the State of Iowa
                    Residing in: Blackhawk County
                    My commission expires:  7/b 3/2023



KURT R LEISTIKOW
Commission Number 185382
My Commission Expires
July 3, 2023

Partial Release of Mortgage - 2

Exhibit I
Page 4 of 5

EXHIBIT "A" to Partial Release of Mortgage

Parcel B:

That portion of the Southwest quarter of Section 8, Township 9 North, Range 30 East, W.M., Franklin County, Washington, described more particularly as follows:

Commencing at the Southwest corner of said Section 8, said corner being South 04°14'13" West 5471.86 feet from the Northwest corner of said section;
thence South 89°23'28" East along the South line of said section 782.49 feet to the True Point of Beginning;

thence North 01°05'06" East 508.87 feet to the beginning of a curve to the left, the radius point of which bears North 88°54'54" West 740.00 feet;
thence Northwesterly along said curve 159.33 feet through a central angle of 12°20'12" to a point that is 40.00 perpendicular to the centerline of the railroad siding;
thence continuing along said curve 41.78 feet. through a central angle of 03°14'00" to the centerline of the railroad siding;
thence North 60°28'07" East 2.11 feet to the Southwest corner of the parcel shown on that record survey filed in Volume 2 of Surveys at page 347;
thence North 60°28'07" East along the South line of said parcel 270.03 feet to the beginning of a curve to the left; the radius point of which bears North 29°31'53" West 716.20 feet;
thence Northeasterly along said curve and said Southerly line 832.73 feet through a central angle of 66°37'44" to the terminus of said curve;
thence North 71°13'27" East along said Southerly line 46.72 feet to the Southeast corner of said parcel and a point on the Westerly right-of-way line of Highway 395;
thence South 13°17'39" East along said Westerly right-of-way line 68.69 feet;
thence South 04°20'11" West 1500.00 feet to a point on the South line of said Section 8;
thence North 89°23'28" West 528.73 feet to the True Point-of-Beginning;

TOGETHER WITH that portion of the Northeast quarter of the Southwest quarter of said Section 8, lying Westerly of SR 395.

Exhibit I
Page 5 of 5